14730

WHETSELL v. SOVEREIGN CAMP, W. O. W.

(198 S. E., 153)

*Messrs. Lide & Felder* and *L. Rosen,* for appellant,

*Messrs. Julian S. Wolfe* and *James A. Moss,* for respondent,

July 22, 1938.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The appellant is a "fraternal, beneficiary Association or Society," which operates under a lodge system, and is governed by a system of government provided by its constitution, laws and by-laws. One becoming a member of the order by initiation and acceptance in one of its subordinate camps, binds himself to be bound and governed by its rules, constitution, laws and by-laws then of force, and all amendments and additions thereto. The order maintains a department of insurance, in which its members may be insured upon applica-

tion through the subordinate camp of which he is a member. If his application is approved, he is issued a certificate of insurance. He is charged a regular assessment, payable monthly or otherwise, as is provided in his certificate; the assessment consists of the amount due to the Sovereign Camp, and the dues of the local camp.

The complaint in this action alleges that plaintiff became a member of the order on June 9, 1904, and there was issued to him a certificate by which he was insured in the sum of $1,000.00; that on the 17th of March, 1920, for and in consideration of the surrender and cancellation of this certificate, the maintenance by plaintiff of his membership in good standing in the order, and the payment to the defendant by the plaintiff of the sum of Two and 94/100 ($2.94) Dollars on or before the last day of each month thereafter, defendant issued to plaintiff its certificate in the amount of one thousand dollars, wherein the defendant agreed to pay to the beneficiary therein named the sum of one thousand dollars on the death of the insured; that the plaintiff performed all of the conditions imposed upon him by the said contract through and including April 30, 1933; that on or about the 30th day of July, 1932, defendant cancelled the certificate of insurance without just cause and excuse, and while plaintiff was in good standing as a member of the order; and that subsequent to the cancellation of the contract, the defendant has collected monthly dues from plaintiff at the rate of Two and 94/100 ($2.94) Dollars per month from said date up to and including April 29, 1933, for the purpose of keeping such contract in force without informing plaintiff of such cancellation, and has accounted to plaintiff for the sum of Eight and 07/100 ($8.07) Dollars only of the premiums subsequently collected since July 30, 1932. That plaintiff is informed that his proportionate share of the funds held in reserve by the association was Two Hundred Seventy-Six and 04/100 ($276.04) Dollars when the contract was cancelled; that defendant, on breach of its contract, has refused to account to plaintiff for his share thereof, but has breached

its trust and converted the same to its own use. That the aforesaid acts of defendant were done for the purpose of cheating and defrauding plaintiff of his share of said reserved funds and of the said premiums. He asks actual and punitive damages in the sum of Three Thousand ($3,000.00) Dollars.

For answer, after admitting the formal allegations of the complaint relating to its incorporation and the fraternal beneficial nature of its business, the defendant sets out the issuing to plaintiff of the certificate of insurance of May 4, 1904; that on February 26, 1920, in consequence of the increase of rates of insurance adopted by the Association on December 31st, 1919, and upon the application of the plaintiff there was issued to him a Universal Whole Life Certificate in exchange for the certificate issued to him May 4, 1904, in the sum of one thousand dollars, with his wife, Louisa Whetsell, as beneficiary. "The said new certificate provided that it was issued and accepted subject to the conditions set forth therein and the provisions of the Constitution and Laws in relation to membership in the Society, together with all amendments thereto thereafter adopted; and it was provided that the Constitution, Laws and By-Laws of the Society and all amendments thereto which might be made thereafter, the application for membership and the certificate should constitute the agreement between the Society and the member, and the member agreed to pay the installments required of him in order to maintain his membership in the Society in accordance with the requirements and provisions of the said Constitution, Laws and By-Laws of the Society and all amendments thereto thereafter adopted; and it also provided that should the certificate be forfeited, the acceptance of any payment from or for the member or other act by any Camp Officer or member of the Society, after said forfeiture, should not operate as an estoppel or as a waiver of the terms of the contract. It was further agreed that the certificate was issued in consideration of the representations and warranties contained in the application and also his

agreement to pay all assessments, dues and installments that might be levied during the time he might remain a member of the Society; and that if such payments were not paid to the Clerk of his Camp as required, the certificate should become null and void; and that the member should pay to the Clerk of his Camp one annual assessment or one monthly installment of the assessment in the sum stated in the certificate and that if he failed to make any such payment on or before the last day of the month, he should stand suspended and during such suspension his beneficiary certificate should be null and void and neither he nor his beneficiary should be entitled to any benefits thereunder."

For further answer, that plaintiff failed to pay the assessment due by him for August, 1932, on or before the 31st day of that month and thereby became suspended in his membership in the society, and his certificate of insurance became null and void under the provisions of Section 63 of the constitution, laws and by-laws of the order, which are as follows:

"Sec. 63. (a) In order to accumulate and maintain funds for the payment of benefits stipulated in beneficiary certificates held by the members of this Association, as and when such benefits accrue, to maintain the reserves thereon and to provide for the payment of the expenses of the Association, every member of this Association shall pay to the Financial Secretary of his Camp one annual assessment in advance each year, or one monthly installment of assessment each month, as required by these laws or by the provisions of his beneficiary certificate, which shall be credited to and known as the Sovereign Camp fund; and he shall also pay such Camp dues as may be required by the By-Laws of his Camp.

"(b) If he fails to make any such payment on or before the last day of the month he shall thereby become suspended, his beneficiary certificate shall be void, the contract between such person and the Association shall thereby completely terminate, and all monies paid on account of such member-

ship shall be retained by the Association as his liquidated proportionate part of the cost of doing business and the cost of the protection furnished on the life of said member from the delivery of his certificate to the date of his suspension."

That plaintiff failed to avail himself of the provisions of Section 65 of the constitution, laws and by-laws of the order relating to the reinstatement of a suspended member: "Sec. 65. Any person who has become suspended because of the non-payment of any installment of assessment, if in good health, made within three calendar months from the date of his suspension again become a member of the Association by the payment of the current installment of the assessment and all installments of assessments which should have been paid to maintain him as a member. Whenever installments of assessments are paid by or for a person who has become suspended for the purpose of making him again a member, such payment shall be held to warrant that he is at the time of making such payment in good health, and to warrant that he will remain in good health for thirty days after such attempt to again become a member, and to contract that such installments when so paid after he has become suspended for non-payment of assessments shall be received and retained without waiving any of the provisions of this section or of these laws until such time as the Secretary of the Association shall have received actual, not constructive or imputed, knowledge that the person was not in fact in good health when he attempted to again become a member. Provided, that the receipt and the retention of payment of such installments of assessments in case such person is not in good health shall not make such person a member or entitle him or his beneficiary to any right whatever."

That Section 66 (a) of the constitution, laws and by-laws is as follows: "The retention by the Association of any installments of assessment paid by or for any person after

he has become suspended in order to again make him a member shall not constitute a waiver of any of the provisions of this Constitution, Laws and By-Laws, or an estoppel upon the Association."

It is further alleged by the answer that plaintiff failed to pay the installments of assessment for the months of August, 1932, to and including January, 1933, and thereafter attempted to be reinstated by paying to the financial secretary of his local camp the assessments for the months of February, March and April, 1933, but did not comply with the provisions of the constitution, laws and by-laws relating to reinstatements; no further installments were paid by him or for him, and the certificate of insurance became null and void, and the amount paid by him for the three installments of February, March and April, 1933, was returned to him and accepted by him.

That on or about August 21, 1934, the plaintiff brought action in the Court of Common Pleas for Orangeburg County to recover certain benefits under the certificate issued to him in 1920, in which action defendant filed an answer in which it was alleged that the plaintiff had become suspended and his certificate forfeited and he was no longer entitled to benefits thereunder; that in that case the parties were identical with the parties in this case, and there was involved for adjudication the same subject-matter and the same questions as are involved in this action. That that action came on for consideration and the complaint was dismissed by order of the Court; and that suit and its adjudication are pleaded in bar of recovery in this suit, and the questions involved and sought to be adjudicated herein are *res adjudicata*.

To the answer plaintiff made reply:

1. That the Court was without jurisdiction to make the order referred to in the answer, that the cause therein maintained has never been adjudicated and is still pending in this Court.

2. The defendant (plaintiff?) denies that the judgment referred to in defendant's answer renders the issues in this action *res adjudicata.*

On the issues thus made by the pleadings, the case came to trial before his Honor, Judge Bellinger, with a jury, in the Court of Common Pleas for Orangeburg County at the December, 1937, term thereof.

At the conclusion of all the testimony, the defendant moved for a directed verdict on the following grounds:

1. The testimony shows that the last payment on account of the monthly installments was made by plaintiff on August 31, 1932, and under the constitution of the society his certificate became null and void.

2. The plea of *res adjudicata,* as set forth in the answer.

The motion for directed verdict was refused, but the Court ruled that the plaintiff could not recover punitive damages, saying: "I fail to see any fraud in this case." He also charged the jury that the plaintiff could not recover an amount equal to the face of the policy. The jury found for the plaintiff the sum of $999. 00.

Motion for new trial was made on the ground that the amount of the verdict is excessive, is not responsive to the testimony and is contrary to the instructions to the jury by the Court. The motion was refused, and defendant appeals upon seven exceptions, which it elects to consider under five heads as follows:

"1. Was the order signed by Judge Sease dismissing first case between identical parties conclusive as to this case and should the plea of *res adjudicata* be sustained?

"2. Did the plaintiff-respondent fail to meet his installment payments on account of his insurance policy as required by the constitution and laws of the Society?

"3. Was plaintiff-respondent delinquent in meeting his payments and if so did it render his insurance ineffective?

"4. Did the Circuit Judge err in refusing to direct a verdict upon the entire case in favor of the defendant?

"5. Should the trial Judge have granted defendant a new trial as the verdict of the jury was so close to the amount of insurance in favor of plaintiff?"

The plaintiff appeals from the order directing a verdict for the defendant on the issue of punitive damages on two grounds: 1. That the allegations of the complaint charging defendant with breach of contract accompanied by fraudulent acts are not denied. 2. That there is evidence in the record from which the jury could have found that the contract was breached with fraudulent intent.

Does the order of Judge Sease, which dismissed the complaint in the first case between these parties, render the issues in the present case *res adjudicata?*

That order is in these words:

"The above entitled cause coming on for consideration, and, after such consideration, now, on motion of Messrs. Lide & Felder, Attorneys for the defendant:

"It is ordered, that the complaint in the above entitled action be, and the same is hereby, dismissed, and the case finally ended in favor of the defendant."

There is, we think, no question here of the elements necessary to sustain a plea of *res adjudicata.* The question which confronts us is this, does the order of Judge Sease finally dispose of the case, and was the order passed after a hearing on the merits?

It is true that the order says that the cause came on for consideration, *and after such consideration,* the order was made. But the testimony of Mr. Zeigler, the plaintiff's attorney in that action, and that of Mr. Gramling, the Clerk of the Court, shows that the case was not heard on its merits, and the Journal of the Court of Common Pleas for that term of the Court contains no entry to show that that case was tried at that term.

We think that the weight of the opinion of the majority of the Courts and text writers is that in order that the plea of *res adjudicata* be sustained as a bar to the maintenance of another suit between the same parties

on the same cause of action, there must have been a final determination of the first cause on its merits. See *Logan v. Railway Co.*, 82 S. C., 518, 64 S. E., 515.

In the case of *Nesbitt Auto Co. v. Kirby*, 114 S. C., 200, 103 S. E., 532, this Court said (page 533): "The record in this case (we are bound by the record) does not show that the action for claim and delivery proceeded to judgment. The record only shows that an action was brought, and the defendant surrendered the possession and made default. The record does not show that there was a judgment, and of course if there was no judgment there can be no *res adjudicata.*"

In the present case, the record does not show that any judgment was entered on the order. From the respondent's brief we take the following excerpt from the case of *U. S. v. California Bridge & Const. Co.*, 245 U. S., 337, 38 S. Ct., 91, 93, 62 L. Ed., 332: "The doctrine of estoppel by judgment, or *res judicata*, as a practical matter, proceeds upon the principle that one person shall not a second time litigate, with the same person or with another so identified in interest with such person that he represents the same legal right, precisely the same question, particular controversy, or issue which has been necessarily tried and finally determined, upon its merits, by a Court of competent jurisdiction, in a judgment *in personam* in a former suit." This citation is supported by other authorities submitted by the respondent.

The consensus of the authorities of this and other jurisdictions, federal and State, satisfies us that in order that a legal proceeding or action shall have the effect of being *res adjudicata* of a subsequent proceeding or action, the first one must have gone to final determination on the merits.

The order of Judge Sease is not such a final determination of the action.

The second and third exceptions of the appellant,

which may be considered together, present the crucial issue of the appeal, viz.:

Was the respondent in arrears with the payment of the monthly installments, or assessments of dues on account of his insurance? Was he lawfully suspended for the failure to pay his assessments in accordance with the constitution and laws of the order?

The plaintiff alleges in his complaint that he performed all of the conditions imposed upon him by the said contract through and including April 30, 1933; that on or about July 30, 1932, the defendant, without just cause or excuse and while plaintiff was in good standing in the order, cancelled the contract or certificate; that subsequent to the cancellation, the defendant collected from plaintiff premiums or monthly dues in the amount to two and 94/100 dollars per month up to and including April 29, 1933, and has accounted to plaintiff for eight and 07/100 dollars thereof. That these acts of the defendant were done for the purpose of cheating and defrauding the plaintiff. Hence, he demands actual and punitive damages in the sum of three thousand dollars.

The answer alleges that the plaintiff failed to pay the installment due by him for the month of August, 1932, on or before the 31st of August, 1932, and thereby he became suspended in his membership in the society; and his insurance then became null and void, under the provisions of the constitution, laws and by-laws of the society. The provisions of these are set out in part elsewhere in this opinion, and are set out in full in the record and should be read in connection herewith. It is further alleged that plaintiff failed to pay the assessment of dues for the months of September, October, November and December, 1932. That he undertook to become reinstated in his membership, as he had a right to be if he complied with the provisions of the constitution, laws and by-laws of the society. These requirements are set out herein as Section 65. These are that the appellant for reinstatement must show that he is in good health, must apply within three calendar months from the

date of his suspension, by paying the current installment of assessments and all installments of assessments which should have been paid to maintain him as a member. Further, that the plaintiff failed to pay the assessment for August, 1932, and those to and including January, 1933, and thereafter attempted to become reinstated by paying the financial secretary of his local camp the installments of assessments for the months of February, March and April, 1933, but he did not comply with the requirements of the constitution, laws and by-laws of the society, and no further installments were paid by or for the plaintiff; and the amount paid for these installments in the sum of eight and 07/100 dollars was refunded to and accepted by the plaintiff.

Plaintiff set out to prove that he paid all the assessments of dues which he was obligated to pay under the constitution, laws and by-laws of the society and was in good standing in the society when the society cancelled his policy on or about the 30th of July, 1932, with intent to cheat and defraud the plaintiff of his rights as a member of the society.

Has he met this obligation by the testimony?

Plaintiff introduced receipts from financial secretary of his local camp to show that he had paid his assessments for the months of July and August, 1932. From these it would appear that plaintiff was in error in saying that defendant cancelled the contract of insurance on or about the 30th of July, 1932, and the defendant was in error in saying that the plaintiff was suspended for the non-payment of the assessment for August, 1932. Plaintiff produced no other receipts showing payment of dues until those for February, March and April, 1933. He testified that he never made any payments in person to any one except the financial secretary of his local camp. He testified that he did not pay any assessments due the months of September, October, November and December, 1932. That he was sick then; "It was done by the Secretary or some one of the family," but the secretary nor any member of the family testifies to this effect. He testifies that the local lodge agreed to pay the premiums during that

time. He testifies that from the time he took out his second certificate up to and including July 30, 1932, he paid the financial secretary of his local lodge the sum of two and 94/100 dollars monthly; subsequent to July 30, 1932, he paid the financial secretary the installments, *represented by the receipts previously introduced in evidence.*" (Italics added.) It will be observed that no receipts for the payment of dues for September, October, November and December, 1932, were introduced in evidence.

On cross examination plaintiff testified:

"Q. You paid up this monthly installment that way payable in August? A. Yes, Sir; as far as I know.

"Q. How about September? A. I can't tell you except for the receipts.

"Q. That's all you can tell about it? A. Yes, sir.

"Q. You haven't got a receipt for September? A. Might have.

"Q. You have no receipt for October? A. Probably could get it.

"Q. You don't know if they have been paid? A. I know they were paid.

"Q. Did you pay them? A. As far as I know I did.

"Q. Not positive about it? A. No, Sir.

"Q. Paid as far as you know? A. Yes, Sir.

"Q. You paid no payment for November, 1932? A. None there.

"Q. The last 1932 receipt you have is August 31? A. Yes, Sir.

"Q. Then you have receipts for February, March and April, 1933? A. Yes, Sir.

"Q. Between those payments you never paid anything yourself? A. I don't recall.

"Q. You can't recall? A. At that time I was sick. How it was done I can't tell you now.

"Q. You don't know anything about the payments at that time? A. No, Sir."

On further cross examination relative to a letter written to Mr. John T. Yates, then the sovereign clerk of the society, by the secretary of the local camp, the plaintiff said the letter was written at his request; it is as follows:

"Mr. John T. Yates,                            "Bowman, S. C.
"Dear Sir:                                     "October 15, 1932.

"I have been requested by Sov. D. R. Whetsell of Camp 139 at Bowman that he is unaible (?) to pay his W. O. W. dues and he wants to know what you would let him have on his policy he is 60 yr. of aig & and from my personal knowledge he havent ben aible to do any work for a yr. and have undergone a serious operation for adhesions & apendicitis & he is not phisicaly aible to do a thing for a livelyhood, and the Camp have helped him on this far, now I would appreciate a reply from you to lighten the burden on all parties concerned.

"Please let me here from you in the near future.

Yours truly,          Q. J. Thompson,
                      "Camp 139,
                      "Bowman, S. C."

That is the evidence which the plaintiff introduced to show that he has paid all the installments of assessments imposed upon him by the constitution, laws and by-laws of the society.

As against this evidence, the defendant introduced in evidence the letter written to Mr. Yates at the request of the plaintiff, and the evidence of Mr. John T. Yates, who testified that he received from plaintiff the following letter, ff. 269-270:

"Mr. John T. Yates.                            "Bowman, S. C.
"Dear Sir:                                     "June 13, 1933.

"I am sorry but I just cannot pay my W. O. W. premiums. I wish you would help me if you can. and oblige.

                      "D. R. Whetsell
                      "Bowman, S. C."

Mr. Yates further testified that it was not here, as alleged in the complaint, that the society cancelled his certificate. Mr. Yates further explains that there was no such fund as that which plaintiff alleges in his complaint was held in reserve and in which he was entitled to a proportionate share, amounting to two hundred and seventy-six and 04/100 dollars. He further testified as follows:

"On May 2, 1933, I received from Q. J. Thompson, then Financial Secretary of Local Camp No. 139 of the defendant, located at Bowman, S. C., a remittance of $5.38 to pay the February and March, 1933, installments for David R. Whetsell; and held the same until I had received the information that he had not paid the installments for the months of August, 1932, to January, 1933, inclusive. On May 23, 1933, I received a remittance from the Financial Secretary, Q. J. Thompson, which included a remittance of $2.69 to pay the April, 1933, installments on this beneficiary certificate; but upon receiving a report from our Field Auditor which showed that David. R. Whetsell had not paid the monthly installments from August, 1932 to January, 1933, inclusive, I refused to retain the remittances which had been made to pay the February, March and April, 1933, installments for David R. Whetsell and returned the same to him by means of our refunding check No. B-22483 in the sum of $8.07.

"Said refunding check was received and accepted by David R. Whetsell, endorsed and presented for payment by him and paid by the defendant."

An analysis of this evidence can lead to but one conclusion, and that is that plaintiff failed to pay the installments of assessments and dues when they fell due, and *ipso facto* became suspended from membership in the society.

The plaintiff alleges in his complaint that his contract of insurance was cancelled on or about July 30, 1932; there is not a word of testimony to support the al-

legation; the sovereign secretary testifies that it is not true. The defendant alleges that the plaintiff failed to pay his installment of assessment for the month of August, 1932, and by operation of the provisions of the constitution, laws and by-laws of the society, he became suspended. On the trial, plaintiff produced a receipt for the assessment of August, 1932; who paid it, to whom and when it was paid, does not clearly appear, it would seem that it was never received by the sovereign camp. Be that as it may, there can be no doubt that the plaintiff failed to pay the assessments for September, October, November and December, 1932, and January, 1933; he was suspended. It does not appear that he ever made application for reinstatement. The payments for February, March and April, 1933, were plainly an effort to ignore the effect of his failure to pay the installments for September, October, November and December, 1932, and January, 1933. The fact that they were retained until the report of the field auditor was received is justified by the constitution, laws and by-laws of the society, which provide that such action shall not be taken or held to be waiver by the society. Moreover, waiver has not been pleaded or relied on by plaintiff. Plaintiff has accepted the refund of the premiums paid for the months of February, March and April, 1933, and is not in position to claim waiver. Indeed, waiver is not pleaded, nor is it urged in the case.

We think the motion for directed verdict made by defendant should have been granted as a matter of law.

It would seem that the issue made by the fifth question of the brief is academic. However, we may say that we think the motion for new trial should have been granted. The Court had eliminated the issue of punitive damages. The Court also instructed the jury what constituted the elements of damages they might consider, viz., the premiums paid by the plaintiff. There is no proof of the amount thus paid, but if the amount be reached by a calculation of the amount paid from 1920 to 1932, it will fall far short of

the amount included. There is not a particle of testimony to show that there was a reserve fund of which plaintiff's proportionate share was $276.04. The defendant's uncontradicted evidence shows that no such fund existed. Therefore, *that sum could not be included in the verdict for $999.00.*

His Honor also charged: "You must determine from the *evidence, if any there be,* (Italics added) how long the insured would at his age be expected to live. That is what is known as life expectancy."

There is no evidence to show the life expectancy of the plaintiff. The mortuary table established by Section 735, Vol. 1, Code 1932, for the purpose of fixing the life expectancy of a litigant in Court, was not introduced in evidence, nor was any other evidence of like character introduced.

"In addition, you must take into consideration *any evidence, if any there be,* (Italics added) that the plaintiff is now in such physical condition that he could not procure additional or other insurance."

The complaint does not allege that plaintiff is in such physical condition as to preclude him from getting additional or other insurance; nor is there any evidence that he has applied for and failed to get other insurance. Therefore, that matter could not be an element in the making up of the amount found by the jury for actual damages; there was no evidence upon which they could predicate such element of damages.

His Honor further charged: "However, the amount to which the plaintff would be entitled to recover, if any, could not be equal to the amount of the lapsed or cancelled policy. In other words, the amount of that policy would be the amount that would be paid upon his death. He could not recover damages equal to the amount of the lapsed or concelled policy."

The amount of the lapsed policy is $1,000.00; the verdict is for $999.00. It is patent that there is no evidence of actual damages upon which the jury could

have based such a verdict. The inference is inevitable that the jury ignored the instructions of the Court, or else capriciously fixed the verdict at an infinitesimal amount under the face amount of the policy. If that verdict is allowed to stand it is in effect to ridicule the dignity and seriousness of Court proceedings. We are mindful of the rule that it is within the discretion of the Court to grant a new trial. But we are also aware of the rule that when such refusal amounts to a judicial abuse of discretion, this Court may rectify the error. We think his Honor, the presiding Judge, erred in refusing to grant the motion for new trial.

The plaintiff appeals from the order of the trial Judge which grants the motion for directed verdict insofar as it relates to punitive damages.

As we understand the argument of plaintiff's counsel, they take the position that the complaint charges that the actions of the defendant were done for the purpose of cheating and defrauding the plaintiff out of the premiums paid by him and his proportionate share of the funds apportioned to him under the terms of said contract, and did so cheat and defraud him; and that inasmuch as defendant did not specifically deny such allegations, they are to be taken as true.

We know of no rule of pleading which requires that a defendant must say in specific language "I deny" this and that allegation of the complaint. If the answer is couched in such plain and unambiguous language and states facts which inform the plaintiff of the issues he is called upon to meet on the trial of the case, nothing more is demanded of him. Plaintiff's complaint charges that defendant wrongfully cancelled plaintiff's certificate of insurance; defendant replies and says "your certificate provides that you accept it subject to the provisions and by-laws of the Constitution of the Society, one of which is that if you fail to pay the monthly installments of assessments when they fall due and payable, you will stand suspended

from membership in the Society; that you did fail to pay such assessments and by operation of the Constitution, Laws and By-Laws of the Society, you became suspended."

Here is a complete and competent denial of the allegation that defendant illegally suspended plaintiff with intent to cheat and defraud him, or that it cancelled his policy at all.

We think plaintiff's contention is without merit; and we concur with his Honor, the trial Judge, when he said: "I fail to see any fraud in this case."

The judgment of the Circuit Court is reversed, and the case is remanded to that Court with direction to enter judgment for the defendant under Rule 27 of this Court.

MR. CHIEF JUSTICE STABLER, MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE G. B. GREENE concur.

MR. JUSTICE CARTER did not participate on account of illness.