# UNITED STATES *v.* CALIFORNIA BRIDGE & CONSTRUCTION COMPANY.

# CALIFORNIA BRIDGE & CONSTRUCTION COMPANY *v.* UNITED STATES.

### APPEALS FROM THE COURT OF CLAIMS.

Nos. 39, 40. Argued November 9, 12, 1917.—Decided December 10, 1917.

Claimant entered into a contract with the United States to erect certain structures "at the United States navy yard, Mare Island." *Held,* upon the facts, as found by the court below, that the site selected before the execution of the contract was selected provisionally and subject to be changed by the Government for some other location within the navy yard, and that claimant so understood when the contract was made.

A judgment exonerating a surety on a government construction contract, upon the ground that the location of the work was changed by the United States without the surety's consent, is not *res judicata* in respect of the right of the United States to make the change as against the principal contractor, when the latter was not a party to the action in which the judgment was rendered and when the right is dependent, not upon the terms of the written contract, but upon notice and representations *aliunde,* which in the case of the surety

may have been different, and so have produced a different understanding, than in the case of the principal.

Having annulled a construction contract for default, the United States re-let the contract at higher cost. Under supplemental agreements with the new contractor, certain deviations from the contract were made, involving a cost of about 6% of the total contract price and requiring estimates of the attendant expenses. Notwithstanding that these changes, on the whole, reduced the cost of the work, *held,* because of the deviations, that the difference between the cost and the original contract price was not a proper measure of the original contractor's liability.

In view of the history of the negotiation preceding the contract here in question, *held,* that it would be highly inequitable to allow the Government's claim of liquidated damages.

50 Ct. Clms. 40, affirmed.

THE cases are stated in the opinion.

*Mr. Assistant Attorney General Thompson,* with whom *Mr. Chas. F. Jones* was on the brief, for the United States.

*Mr. George A. King,* with whom *Mr. Archibald King* was on the brief, for California Bridge & Construction Co.

MR. JUSTICE CLARKE delivered the opinion of the court.

These two cases are appeals from the Court of Claims which were heard and will be decided together, the second being a cross appeal from the judgment denying recovery on the Government's counterclaim.

The California Bridge & Construction Company, hereinafter referred to as the Bridge Company, on December 21, 1898, with the American Surety Company of New York, Albert Brown and Thomas Prather as its sureties, entered into a written contract with the United States to furnish the materials for and to completely construct, within six months from the date of the contract, a saw mill, boiler house and steel chimney "at the United States navy yard, Mare Island, California."

On January 2, 1901, claiming to act under an option therein contained, the Government declared the contract void, and the Bridge Company was notified that the work would be completed at its expense. Under a second contract the work was completed by another contractor.

In its amended petition the Bridge Company claimed that the Government had terminated the contract without warrant and sought to recover for materials furnished, expenses incurred and anticipated profits. The Government denied all liability to the plaintiff and in a counterclaim prayed for a judgment for the difference between the amount of the plaintiff's contract and the cost of completing the work, plus liquidated damages.

The substance of the Bridge Company's first claim is, that when, for the purpose of informing itself with a view to bidding on the proposed work, its President and Secretary visited the Navy Yard, a location for the construction, hereinafter designated the "first location," was shown to them, duly staked out, and that its bid was based upon this representation; that after the contract was executed, without the consent of the Bridge Company, this location was changed to another, hereinafter designated the "second location," still within the Navy Yard but one upon which it was much more difficult and expensive to construct the work than upon the first location; and that the Government refused to agree to make a reasonable allowance for such increased expense, and wrongfully annulled the contract to the damage of the claimant.

To this branch of the case the defense is that, at the time the officials of the plaintiff visited the Navy Yard and also when the contract was signed, the precise location of the plant had not been officially determined upon, that they were then so informed, and made their bid with that understanding, and that the contract was lawfully annulled for delay in going forward with the performance of it.

The case is here for review on a finding of facts by the
Court of Claims, in which it is stated that when the Pres-
ident of the Bridge Company visited the Navy Yard be-
fore the contract was signed he was authoritatively in-
formed "that the site of said structure was not definitely
fixed," and that "the location was liable to be changed to
some other place within the limits of the navy yard."
The correspondence, appearing in the finding of facts,
which passed between the parties before the contract was
annulled makes it clear beyond controversy that the
Bridge Company when it executed the contract fully
understood that another location than the one pointed
out might finally be selected.

Not long after the contract was signed, as if concluding
that it was an improvident one, which it wished to modify,
the Bridge Company, for various reasons, some with and
more without merit, delayed in going forward with the
work, with the result that after much discussion, on Jan-
uary 2, 1901, in a letter addressed to the Bridge Company,
the Government, asserting that it was acting under the
option reserved in the contract, declared it void and gave
notice to the Bridge Company that the work would be
completed at its expense.

The contract contained a provision giving to the Gov-
ernment the option to declare it void if the parties of the
first part should fail in any respect to perform their ob-
ligations under it and we agree with the Court of Claims
in concluding that this action by the Government, taken
upon the recommendation of a board of three naval
officers, was entirely justified.

The Bridge Company further relies upon a judgment
rendered in the federal Circuit Court for the Eastern Dis-
trict of Pennsylvania in favor of its surety, the American
Surety Company of New York, as estopping the Govern-
ment from claiming, either in defense or in aid of its coun-
terclaim, that it had the lawful right to require the com-

pany to erect the structure contracted for on the second site.

As a general proposition, the claim that the principal and surety in a contract of suretyship are in such privity that a judgment in favor of the latter works an estoppel in favor of the former arrests attention more by its novelty than by its difficulty, having regard to the several defenses which a surety may have on its contract which the principal may not have. Especially is this true in such a case as we have here, in which the contract of suretyship consists simply in the signing of the construction contract by the Surety Company "as surety," so that the rights and obligations of the parties to it must be derived wholly from the law of suretyship.

In dealing with this contention of the Bridge Company, it will not be necessary for us to enter into the refinements of the decisions with respect to privity and privies.

The doctrine of estoppel by judgment, or *res judicata,* as a practical matter, proceeds upon the principle that one person shall not a second time litigate, with the same person or with another so identified in interest with such person that he represents the same legal right, precisely the same question, particular controversy, or issue, which has been necessarily tried and finally determined, upon its merits, by a court of competent jurisdiction, in a judgment *in personam* in a former suit. *Hopkins* v. *Lee,* 6 Wheat. 109, 113; *Washington, Alexandria & Georgetown Packet Co.* v. *Sickles,* 24 How. 333; *s. c.,* 5 Wall. 580; *Lovejoy* v. *Murray,* 3 Wall. 1, 18; *Litchfield* v. *Goodnow,* 123 U. S. 549; *Southern Pacific Co.* v. *United States,* 168 U. S. 1, 48; *Fayerweather* v. *Ritch,* 195 U. S. 276; *Bigelow* v. *Old Dominion Copper Mining Co.,* 225 U. S. 111, 127; Bigelow on Estoppel, c. 3.

The suit in which this judgment claimed as an estoppel was rendered was commenced by the Government against the American Surety Company and others, as sureties of

the Bridge Company on the building contract, to recover
the difference between the amount which the Govern-
ment was compelled to pay for the completed work and
the amount for which the Bridge Company had contracted
to complete it. The Surety Company was the only de-
fendant which was served or appeared in the suit. With
respect to this judgment the Court of Claims finds that in
the Circuit Court the Surety Company pleaded *non
assumpsit* and a special plea based on the action of the
United States "in assuming to change the contract by
changing the site for the buildings to be erected, to which
change said surety company had not assented." And also
that the Circuit Court "submitted to the jury the ques-
tion whether under the contract and the circumstances
attending its execution the United States could require
claimants to erect the structures contemplated by the
contract at a site other than the first site," and that "the
jury brought in a verdict for the defendant surety com-
pany and judgment was entered accordingly." No writ
of error was procured to review this judgment.

Obviously, the finding and judgment thus described
by the Court of Claims must be understood as deciding
that the Government was not justified in requiring the
construction to be on the "second location" as against
the Surety Company, which was the only defendant served
or appearing in that action, but not as so holding as against
the Bridge Company, which was a stranger to it, and
therefore the judgment in that case cannot serve as an
estoppel in this one unless the issue relied upon by the
Surety Company in the Circuit Court case to defeat the
claim of the Government for damages was precisely the
same as is relied upon in this case by the Bridge Company
for the same purpose, and a brief discussion of the record
will show that such is not the fact.

It is to be noted that the contract provides for the com-
pleting of the required construction "at the United States

navy yard, Mare Island, California" without designation of the precise location in the Navy Yard, and therefore since the "first" and "second" locations were both within the limits of the Yard it was necessary to determine from evidence *aliunde* the writing whether the "first location" was represented to either the Surety Company or to the Bridge Company as having been finally determined upon before they executed the contract, and the information which each received as to this fact would determine its legal rights with respect to the claim of the Government for damages.

The defense in the former case turned on the information which the Surety Company received as to the precise location in the Navy Yard of the proposed construction before it executed the contract,—whether it was informed as to the "first location" and as to whether that location had been finally or only tentatively determined upon,—and the claim of the Bridge Company in this case turns on the information, also with respect to the "first location," which that company received before signing the contract. But since there was no relation between the two companies, such that either was or is chargeable with the knowledge which the other had on this disputed subject, and since the notice which one of them had may have been entirely different from that which the other received, clearly the Surety Company may have been informed that the "first location" had been definitely determined upon and may have executed the contract with that understanding, as the judgment in its favor in the Circuit Court implies, while, at the same time, as the Government claims in this case, the Bridge Company, prior to and at the time of the signing of the contract, may have been informed that the "first location" was tentative only and subject to change, as the Court of Claims has found to be true.

Thus, since the legal liability of the Surety Company and the Bridge Company depend as to each upon peculiar

facts, of each case, and as one could very well be liable and the other not, it is plain that the issue determined in the Circuit Court case was not the same as that which was presented in this case and that therefore the claim of estoppel by former judgment is without merit and must be denied.

There remains to be considered the cross appeal of the Government.

After the contract with the Bridge Company was annulled the Government entered into a contract with another contractor, identical with the former one, except for some unimportant additions to the specifications. But, in the progress of the work, four supplemental contracts were deemed necessary by the Government, and were entered into in writing with the second contractor and his surety.

The first of these supplemental contracts related to change in the length and size of the foundation piles to be used, involving an estimated reduction in payment to be made of almost $3,000; the second provided for an addition to the number of piles provided for in the second contract; the third covered changes in the character of various parts of the foundation to be constructed, and the fourth provided for changes in walls, doors, stairways and for the adding a foundation for a bulkhead wall. While the additional cost involved in the changes provided for in three of these supplemental contracts is less than the reduction in cost of the changes provided for in the other one of them, yet, since they constitute a deviation from the original contract, involving a cost of about six per cent. of the total contract price, and since each of these supplemental contracts required an agreement with the new contractor which involved an estimate of the expense of making the changes contemplated by them, we agree with the Court of Claims in concluding that it cannot be said that the work performed under the second contract

was so substantially that which the Bridge Company contracted to perform as to permit the recovery of the difference in cost between the two under the familiar rules applicable to the subject.

The history of the negotiation between the Bridge Company and the Government before the first contract was annulled, as it appears in the finding of facts, makes it highly inequitable that the claim of liquidated damages should be allowed. The recovery of the Bridge Company, limited as it was to the value of the materials delivered by it and used by the Government, is approved. It results that the judgment of the Court of Claims is

*Affirmed.*