In re William **ALDERMAN**, dba Bill's Meat Market, and Darlene Alderman, Debtors.

William **ALDERMAN**, and Darlene Alderman, Appellants,

v.

Craig D. **MARTINSON**, Trustee, Appellee.

BAP No. MT–95–1721–AsMeHi. Bankruptcy No. 92–11232–7.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 16, 1995.

Decided March 29, 1996.

Jerrold L. Nye, Billings, MT, for Appellants.

Craig D. Martinson; Billings, MT, for Appellee.

Before: ASHLAND, MEYERS, and HIGDON [1], Bankruptcy Judges.

## OPINION

ASHLAND, Bankruptcy Judge:

### STATEMENT OF FACTS

The debtors William and Darlene Alderman filed Chapter 13 on August 6, 1992 and their third amended plan was ordered confirmed February 16, 1993. At the time of filing, the debtors were partners in the Alderman Ranch Partnership which owned certain real property of which William Alderman held a 12.2% interest. The debtors had previously filed a Declaration of Homestead with respect to the property in June 1992 and their Chapter 13 schedules reflected a claimed homestead exemption valued at the "maximum allowed." Under Montana law, a homestead exemption is allowed up to $40,-000. Mont.Code Ann. § 70–32–104(1) (1994).

Earlier in the proceedings, the trustee had objected to the debtors' second amended plan arguing that partnership property could not be claimed under the homestead exemption and as a consequence the debtors' plan failed the best interest of creditors test under § 1325(a)(4). The court held that exemptions which had not been timely objected to were valid under the holding of *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), and could not be considered in determining the best interest of creditors. The decision of the bankruptcy court is reported at *In re Alderman,* 150 B.R. 246 (Bankr.D.Mont.1993).

1. Hon. Polly S. Higdon, Bankruptcy Judge for the District of Oregon, sitting by designation.

The debtors later moved to convert their case to one under Chapter 7 which was granted on December 2, 1994. By order of the court January 26, 1995, the debtors were allowed to amend their schedules. The homestead exemption claimed on Schedule B–4 and listed on Schedule C was not amended or modified. It continued to show the debtors as having a 12.2% interest in the partnership property and claiming an exemption value to the "maximum allowed." Although it is not clear from the record when the debtors amended their schedules it appears that the Chapter 7 trustee did not object to the claimed homestead exemption within the time prescribed by Bankruptcy Rule 4003(b).

Prior to conversion, on May 16, 1994, the partnership property was sold for $700,000 pursuant to a contract for deed. The sum of $287,000 was paid upon execution of the contract. The balance of $413,000 with interest at 7.5% was to be paid as follows: 1) payment of $38,000 on January 1, 1995, and 2) the balance of $375,000 plus interest paid in annual amortized installments of $51,262.50 commencing January 1, 1996 until paid in full. It is important to note that the closing documents determined that William Alderman held a 14.54% interest in the property. On January 1, 1995, the buyers made the requisite payment of $38,000, plus accrued interest. Accordingly, the escrow agent disbursed $8,350.85 to the debtor, representing his 14.54% share of the proceeds plus interest.

On April 26, 1995, the Chapter 7 trustee filed a motion to determine the homestead exemption value and requested that any excess be turned over to the estate. In Montana, the maximum homestead allowance is $40,000, and the trustee argued that the debtor's exemption should be limited to either 12.2% or 14.54% of that amount, whichever properly represented the amount of his ownership interest. Debtors countered that the objection was untimely under the holding in *Taylor*, and that a $40,000 exemption had been allowed in the earlier *Alderman* decision and in their confirmed Chapter 13 plan.

The bankruptcy court characterized the issue as a determination of the allowable exemption amount not as an objection to the exemption itself. Montana limits a claimant's homestead exemption to an amount proportional to his undivided interest. *See* Mont.Code Ann. § 70–32–104(2) (1994). As such, the court fixed the exemption at $5,816 or 14.54% of the maximum homestead allowance and ordered that the excess payments be turned over to the estate. The debtors filed a timely appeal.

## ISSUED PRESENTED

1.  Whether the homestead exemption in a case converted from Chapter 13 to Chapter 7 is determined at the time of the original petition or upon the date of conversion.

2.  Whether the trustee's motion to determine the homestead exemption value was untimely under Bankruptcy Rule 4003(b) and the holding in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

## STANDARD OF REVIEW

■ The bankruptcy court's conclusions of law are reviewed de novo. *In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 245 (9th Cir.1989); *In re McNutt*, 87 B.R. 84, 85 (9th Cir. BAP 1988).

## DISCUSSION

### 1. Date for determination of homestead exemption.

■ The debtors argue that the bankruptcy court improperly reduced the amount of their homestead exemption from $40,000 to $5,816 and present the following line of reasoning in support thereof. They contend that a petitioner's rights to exemptions are determined as of the date of the bankruptcy petition and note that Bankruptcy Code 348(a) states that conversion from one chapter to another of the code does not change the filing date of the petition. Thus, when the Chapter 13 trustee failed to timely object under Bankruptcy Rule 4003(a) to the homestead exemption it could no longer be objected to pursuant to the holding of *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

They further argue that the holding of *Alderman* and the subsequent confirmation of their third amended Chapter 13 plan which recognized a $40,000 exemption is res judicata with respect to this same issue in the Chapter 7 proceeding. Alternatively, they note that following conversion the Chapter 7 trustee likewise failed to object to the homestead exemption claimed in their amended schedules. Apparently the manner in which the exemption was claimed in the Chapter 13 schedules remained the same in Chapter 7. Because they claimed an exempt value up to the "maximum allowed," the debtors argue that they are entitled to the full $40,000 homestead allowed under Montana law.

In *In re Winchester*, 46 B.R. 492 (9th Cir. BAP 1984), the panel determined that homestead exemptions are determined on the date of conversion from Chapter 13 to Chapter 7. There, the appellants had argued that the court should look to the original petition date to determine what assets constituted property of the Chapter 7 estate and what exemptions the debtor was entitled to. The *Winchester* panel considered the interplay between several code sections and concluded that "logic dictates that the date of conversion is the controlling date...." 46 B.R. at 495.

■ The panel began by noting that property of the estate under § 541 is determined upon commencement of the case, and that § 348(a) states that conversion from one chapter of the code to another does not effect a change in the date of the commencement of the case or the filing of the petition. Thus, the original petition date will normally determine the property of the estate in converted cases. However, the *Winchester* panel went on to note that after-acquired property is also property of the estate under § 1306(a)(1). Logically, the conversion date should control otherwise the after-acquired property would not be in the Chapter 7 estate. Over the course of a plan, a debtor may sell or consume certain property. Combined with the possibility of after-acquired property, the Chapter 7 estate may be substantially different from the Chapter 13 estate. Because Chapter 13 debtors remain in possession of the property they must turn over the property on the date of conversion. 11 U.S.C. § 1306(b). Logically, that same date should determine when exempt property is removed from the estate. *See In re Winchester*, 46 B.R. at 495. *See also In re Lindberg*, 735 F.2d 1087 (8th Cir.1984) (date of conversion from Chapter 13 to Chapter 7 determines when exemptions may be claimed.).

■ The result is different where it is not a Chapter 13 that is being converted. "Where a case is converted from Chapter 11 to Chapter 7, property of the estate is determined by the filing date of the Chapter 11 petition and not by the conversion date." *In re Magallanes*, 96 B.R. 253, 255 (9th Cir. BAP 1988); *In re Kaplan*, 97 B.R. 572, 575 (9th Cir. BAP 1989). "The general rule that exemptions are determined as of the filing date has been narrowed for cases which convert from one chapter of the Code to another...." *In re Gitts*, 116 B.R. 174, 178 fn. 8 (9th Cir. BAP 1990) (citing *Winchester*, 46 B.R. at 493).

Courts have observed the limited purpose of claiming exemptions in a chapter 13 proceeding. Exemptions are listed in the Chapter 13 to permit creditors to determine whether to accept the plan and for the court to determine whether the plan is confirmable. *Lindberg*, 735 F.2d at 1089. As the court in *Winchester* noted:

> The "exemptions" serve only one purpose: they allow the bankruptcy court to make an informed decision regarding the liquidation comparison required by 11 U.S.C. § 1325(a)(4). There is no need for a debtor to have the protection of a true exemption in a Chapter 13 case because § 1306(b) allows the debtor to remain in possession of all the property of the estate. Additionally, § 1327(b) vests all of the property of the estate in the debtor upon confirmation of a plan.

*Winchester*, 46 B.R. at 494.

■ Because we look to the date of conversion to Chapter 7 when determining the debtors' exemptions, decisions made during the course of the Chapter 13 proceeding with respect to Chapter 13 exemptions have no

bearing on the Chapter 7 case. In *Winchester*, conversion of the debtors' case occurred nearly two years after their plan was confirmed. 46 B.R. at 493. Likewise, the Aldermans' case was converted to Chapter 7 following confirmation of their Chapter 13 plan.

▪ Upon conversion, the exemptions are reconsidered and the trustee or other interested parties are free to make timely objections under Rule 4003(b). Thus, neither the confirmed plan nor the bankruptcy court's decision in *Alderman* are binding. With respect to the Chapter 13 plan, the court's reference to the homestead exemption came during the liquidation analysis portion of its confirmation order. This is consistent with the purpose for listing Chapter 13 exemptions recognized by *Winchester* and *Lindberg*. In any event, the holding of *Winchester* that exemptions are determined at the date of conversion from Chapter 13 to Chapter 7 effectively negates any applicability of res judicata.

### 2. Timeliness of objection to the homestead exemption.

▪ After conversion to Chapter 7, the debtors were allowed to amend their previously filed schedules. Debtors contend that the Chapter 7 trustee likewise failed to make a timely objection to the homestead exemption within 30 days of their § 341(a) hearing which was held on January 18, 1995.

Bankruptcy Code § 522(*l*) provides:

The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.

Bankruptcy Rule 4003 establishes the procedure for objection by providing:

(b) Objections to Claim of Exemptions. The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list or supplemental schedules unless, within such period, further time is granted by the court. Copies of the objections shall be delivered or mailed to the trustee and to the person filing the list and the attorney for such person.

Although it is unclear from the record when the debtors' schedules were amended, we can assume that the trustee's April 26, 1995 objection was more than 30 days after that time. The trustee does not argue that it was timely under any specific provision of Rule 4003(b). Instead, he attempts to distinguish the holding of *Taylor*. In any event, the 30 day provision for objecting to amendments refers only to newly claimed exemptions and the debtors have maintained the same exemption throughout the entire course of these proceedings. Having already decided that the conversion to Chapter 7 allows the court to reconsider exemptions, it is doubtful that that aspect of Rule 4003(b) could be implicated at all.

The Supreme Court in *Taylor v. Freeland & Kronz* strictly construed Bankruptcy Code § 522(*l*) and Rule 4003 and held that if no objection is raised to a scheduled exemption within the prescribed time limit that the property claimed is thereafter exempt and its validity cannot be questioned. 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). This is true even where there is no colorable statutory basis for claiming the exemption. 503 U.S. at 643–44, 112 S.Ct. at 1648–49. In *Taylor*, the debtor claimed as exempt property the money she expected to win from an employment discrimination suit. Her schedules described the exemption as "proceeds from the lawsuit" and a "claim for lost wages" of which the value was listed as "unknown." 503 U.S. at 640, 112 S.Ct. at 1646. The judgment became liquidated at $100,000 after the 30 day period for objection had expired and the trustee made an untimely attempt to have the proceeds turned over to the estate. The parties agreed that the debtor could normally exempt only a small portion of the proceeds under § 522(d). Nonetheless, the Supreme Court determined that the exemption was valid and could not be challenged. 503 U.S. at 642, 112 S.Ct. at

1647–48. "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." 503 U.S. at 644, 112 S.Ct. at 1648.

In *In re Canino*, the debtor claimed a homestead exemption of $155,053, far in excess of the statutory limit of $50,000. The trustee failed to timely object pursuant to § 522(*l* ) and Rule 4003. The court determined that the full amount claimed was exempt and could not be challenged. *In re Canino*, 185 B.R. 584, 595 (9th Cir. BAP 1995). *Canino* and *Taylor* present factual and legal situations that are somewhat similar to the scenario presented in our case. Nonetheless, there are differences. It seems clear that if the debtors had claimed the homestead exemption and listed its value at $40,000, the holdings of *Taylor* and *Canino* would preclude the trustee from objecting in this instance. In *Taylor*, the general term "proceeds" was used to encompass the scope of the objection. But in *Canino*, the dollar amount stated as exempt clearly exceeded the statutory limit and was allowed for failure of the trustee to object.

■ The facts of our case are different in that the debtors valued their exemption at the "maximum allowed." This represents an ambiguity in the amount of the claimed exemption. *Canino* recognized that certain cases have made inroads on *Taylor* and suggests that "the uncontested, unambiguous listed exemption stands." *Canino*, 185 B.R. at 593. Where a claimed exemption is ambiguous, it will be resolved against the debtor. *In re Kahan*, 28 F.3d 79 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1100, 130 L.Ed.2d 1067 (1995).

Our situation is more similar to *In re Ross*, a bankruptcy court decision preceding the *Taylor* opinion. In *Ross*, the debtor claimed an exemption for alimony and child support listing the value as "unknown." *In re Ross*, 128 B.R. 785, 786 (Bankr.C.D.Cal.1991). The California exemption statute in question allowed an exemption only for the amount reasonably necessary for support. *Ross*, 128 B.R. at 787. The court held that listing "unknown" was functionally equivalent to leaving a blank under the value column. *Ross*, 128 B.R. at 788. The court ordered

that the schedules be amended and gave the trustee 30 days to object thereafter. Alternatively, the court held that even if the value was sufficiently stated, the trustee was not objecting to the availability of the support exemption but rather seeking a determination of the value of the amount reasonably necessary. *Ross*, 128 B.R. at 789.

In reaching this decision, the court cited to *In re Hyman*, 123 B.R. 342, 348 (9th Cir. BAP 1991) as standing for the proposition that an objection to valuation of the property in which the debtor claims an exemption is not bound by Rule 4003(b). The panel's decision in *Hyman* was later affirmed by the Ninth Circuit Court of Appeals in an opinion that post-dates the Supreme Court's decision in *Taylor*. *Hyman*, 123 B.R. 342 (9th Cir. BAP 1991), *aff'd*, 967 F.2d 1316 (9th Cir. 1992).

The foregoing cases suggest that a motion to value an exemption is not bound by the 30 day bar of Rule 4003. The bankruptcy court in this proceeding believed similarly, specifically stating that *Taylor* did not control in this instance. "The Trustee does not object to the Debtor's allowable Montana homestead exemption. Rather, the Trustee seeks a determination as to the allowable dollar value of such exemption. Taylor is therefore not dispositive of the issue of the allowable amount of the exemption." ORDER, June 19, 1995.

■ Regardless, the manner in which the exemption was valued is inherently ambiguous and calls for valuation at some point in the proceeding. When debtors claim an exemption at the "maximum allowed," that can only mean the maximum allowed by law. Montana law clearly provides that a claimant's homestead exemption is limited to an amount proportional to his ownership interest in the property. Mont.Code Ann. § 70–32–104(2) (1994).

### CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court determining that the debtors were entitled to a 14.54% share or $5,816 of the $40,000 Montana homestead exemption is affirmed.

HIGDON, Bankruptcy Judge, dissenting:

I dissent because I believe that the bankruptcy court entered an order during the Chapter 13 proceeding which, upon conversion of the case to Chapter 7, was res judicata as to the matter of the value of the debtors' homestead exemption in the Chapter 7.

At the time the debtors filed their Chapter 13 petition they claimed a homestead exemption in the partnership property in which Mr. Alderman owned an interest.[2] They claimed the value of the exemption as the "maximum allowed" on their Schedule B–4. The Chapter 13 trustee did not object to this exemption under Bankruptcy Rule 4003(b). However, he did object to confirmation of the debtors' proposed second amended plan, arguing that it did not meet the requirements of 11 U.S.C. § 1325(a)(4) because the debtors could not claim a homestead exemption in property held by a partnership.

The debtors alleged the trustee's objection was in fact an objection to their homestead exemption and, under Bankruptcy Rule 4003(b), was untimely. The bankruptcy court agreed with the debtors. However, the court had a question of the confirmability of the proposed plan before it. Bankruptcy Code § 1325 authorizes the bankruptcy court to confirm a Chapter 13 plan only if it meets the requirements of that section. Thus, in order to address the issue of confirmation the trial court not only had to rule on the trustee's objection but also had to place a value on the property claimed exempt for purposes of determining the amount to be distributed to the unsecured creditors which would meet the requirements of § 1325(a)(4).

The court recognized this responsibility and acted upon it. In *In re Alderman*, 150 B.R. 246, 250–51 (Bankr.D.Mont.1993), the court stated: "[T]he debtors … agree that any amount of Debtors' interest in the partnership property which is sold in excess of the $40,000 homestead exemption must be turned over to the trustee for distribution to the unsecured creditors." The court denied confirmation of the second amended plan only because it provided for distribution to secured claims for which no proofs of claim were filed. The debtors then filed a third amended plan. This plan provided for the same distribution to unsecured creditors as approved by the bankruptcy court in the second amended plan and, in addition, contained the following "liquidation analysis":

> The total amount distributed [to unsecured creditors] under paragraphs 2.d. and e. above will be at least $3,922.00, plus, the net return to Debtors over and above their $40,000 homestead exemption in the Alderman Ranch Partnership will be paid to the Trustee for distribution to unsecured creditors upon sale of the Alderman Ranch and receipt of the funds thereof, which exceeds what would be available to pay unsecured claims if the Debtor's estate was liquidated under Chapter 7 of the U.S. Bankruptcy code.

The court confirmed this plan without objection.

The majority recognizes and supports the bankruptcy court's distinction, in the Chapter 7 proceedings, between disallowing an untimely objection to the availability of the exemption and determining the value of an exemption.[3] Yet it fails to acknowledge what

---

**2.** The debtors' schedules stated that Mr. Alderman held a 12.2% interest in the property. However, when the property was sold the escrow company listed Mr. Alderman's interest at 14.54% and disbursed funds to Mr. Alderman based on that percentage of ownership.

**3.** There will not always be a necessity to distinguish between objecting to the availability of the exemption itself and requesting the court to determine the value of any exemption. The necessity will rest on the language of the statute creating the exemption. It may state that the debtor may exempt one vehicle. The nature of this exemption does not generate a valuation issue. On the other hand, the statute may allow the

debtor an exemption of $1,400 for one vehicle. As the exempt portion of the asset is stated in a given dollar amount the court may be required to place a value on the vehicle. Or, as in this case, the applicable law may allow an exemption with a dollar ceiling and authorize the debtor to claim his proportional share of that exempt amount up to the ceiling. The court will necessarily have to determine the value of the exempt portion of the asset. The distinction between the availability of the exemption itself and a request for valuation of the exempt property is supported by *In re Hyman*, 123 B.R. 342 (9th Cir. BAP 1991), *aff'd*, 967 F.2d 1316 (9th Cir.1992) which held that only an objection as to the former must be made

happened, with regard to this distinction, during the Chapter 13.

At the confirmation hearing on the second amended plan the bankruptcy court, contrary to its later position during the Chapter 7, seems to have determined that, because the trustee's objection to confirmation based on § 1325(a)(4) was in fact an untimely objection to the availability of debtors' claimed homestead exemption, he had no choice, for purposes of § 1325(a)(4), but to value that exemption at $40,000. But, assuming the validity of the distinction made by the bankruptcy court later in the Chapter 7 and supported by this court, during the Chapter 13 proceedings, despite its ruling that the trustee's objection was in the nature of an objection to the availability of a homestead exemption and untimely, it was in fact free to value the debtors' interest in the exemption for purposes of § 1325(a)(4) at $4,880 (12.2% of $40,000). Rather, it determined the value of the debtors' homestead exemption at $40,000 and, by confirming the plan which incorporated that value, entered an order which is res judicata on that issue in the Chapter 7.[4]

The majority seems to rest its holding primarily on *In re Winchester*, 46 B.R. 492 (9th Cir. BAP 1984). That case dictates that in a case converted from Chapter 13 to Chapter 7 the validity of exemptions in the Chapter 7 are to be determined as of the date of the conversion. The Winchesters had had a change of circumstances during the Chapter 13 proceeding which would result in a right to the claimed exemption if the petition date controlled and no right if the conversion date controlled. The bankruptcy court made no

rulings during the Chapter 13 proceedings addressing the debtors' homestead exemption. The issue arose for the first time after the case was converted. Therefore the court did not have to address potential application of the doctrine of res judicata.

Under our facts, upon conversion the debtors made no change to either their Schedule C or their Schedule B–4 other than to change the property from the real estate itself to the proceeds from its sale. This change did not affect their right to the same exemption, which had not changed statutorily and which they continued to claim, using identical language. Montana law placed a monetary cap on the amount of potential exemption the debtors could claim. Consequently, the value of their exemption could not be changed by market forces during the case. Most importantly, the parties placed the value of the exemption at issue during the Chapter 13 proceedings and the court entered a ruling on that issue. Given these facts *Winchester* should not be applied to allow the Chapter 7 trustee to revisit the valuation issue.

The doctrine of res judicata bars relitigation of a cause of action that was previously decided in a valid and final judgment between the same parties or their privies. *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). The doctrine applies to decisions of bankruptcy courts. *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). There are three elements to the doctrine, all of which must be met, before it applies. First, there must be a valid and final judg-

---

within the 30 day period prescribed by Bankruptcy Rule 4003(b).

**4.** The bankruptcy rules suggest that the bankruptcy court should not apply the time limits of Bankruptcy Rule 4003(b) to any objection to confirmation the Chapter 13 trustee may make which raises an issue under 11 U.S.C. § 1325(a)(4). Section 1302(b)(2) requires the trustee to appear at the confirmation hearing. He may be heard on any issue involving plan confirmation. Bankruptcy Rule 3015(f), which addresses the filing of objections to the confirmation of Chapter 13 plans, places no time limits on such filings other than that they must be served pursuant to Bankruptcy Rule 9014 with reasonable notice and opportunity for a hearing.

Interestingly, in dicta the *Winchester* court explains why the bankruptcy court in our case necessarily had to determine the value of the Aldermans' exemption during the Chapter 13 despite its holding overruling the trustee's objection to confirmation as an untimely objection to claimed exemption. It stated: "The 'exemptions' claimed by the debtors upon the filing of their Chapter 13 petition are not really exemptions at all. They are merely statements used to show what the debtors would claim as exempt if their case were a liquidation case.... These 'exemptions' serve only one purpose: they allow the bankruptcy court to make an informed decision regarding the liquidation comparison required by 11 U.S.C. § 1325(a)(4)." *Winchester*, 46 B.R. at 494.

ment. *United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). Second, there must be identity of, or privity between, the parties. A privy is one who is so identified in interest with another that he represents the same legal right. *U.S. v. California Bridge & Construction Co.*, 245 U.S. 337, 38 S.Ct. 91, 62 L.Ed. 332 (1917). Third, the doctrine is limited in application to identical claims. "The principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case." *I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541, 1549 (11th Cir.1986).

In this case there is an identity of interest between the Chapter 13 trustee and the Chapter 7 trustee. They both represented the same rights. The only purpose of both trustees' activities in this case was to maximize the amount to be distributed to the unsecured creditors by requesting the court to determine the value of the exemption available to the debtors. There was, under our facts, privity between the Chapter 7 trustee and the Chapter 13 trustee.[5] In addition, in order to confirm the debtors' Chapter 13 plan the court necessarily addressed the issue of the value of their claimed homestead exemption, the identical issue presented in the Chapter 7 trustee's motion for valuation of the claimed exemption. Finally, the order confirming the debtors' Chapter 13 plan constituted a final judgment on the issue of the value of the debtors' homestead exemption. All of the requisite elements are present, the doctrine of res judicata must be applied. That doctrine bars the Chapter 7 court from reexamining the value of the debtors' claimed exemption. I would reverse the decision of

the bankruptcy court and remand the case for entry of an order placing the value of the debtors' Chapter 7 homestead exemption at $40,000.

---

5. The debtors cite *In re Magallanes*, 96 B.R. 253 (9th Cir. BAP 1988) in support of their argument that the Chapter 13 court's determination of the value of their homestead exemption is res judicata on that issue and constitutes an absolute bar to a subsequent action involving the same cause of action. The majority rejects *Magallanes* because it involves a case which was converted not from Chapter 13 to 7 but from Chapter 11 to 7. Applying *Winchester* it holds that in the former circumstance, unlike the latter, the Chapter 7 trustee has the opportunity to have the court revisit exemption issues.

I agree because in converted Chapter 11 cases the validity of exemptions is determined only as

of the petition date, the *Magallanes* holding is of limited value here. However, it does stand for the proposition that upon conversion the doctrine of res judicata, or claims preclusion, may be applicable despite the fact that the parties raising the litigated issue preconversion may not be identical to the parties raising the issue postconversion. In that case unsecured creditors objected to the exemption in the Chapter 11 and the trustee objected to the exemptions in the Chapter 7. Nonetheless, the court concluded that the doctrine of res judicata did apply, apparently concluding that objecting creditors and the Chapter 7 trustee were so identified in interest that there was privity between them.