In re David MORGAN–BUSBY and
Jennifer Morgan, Debtors.

David Morgan–Busby, Jennifer Morgan,
and Autolife USA, Inc., Appellants,

v.

Leslie T. Gladstone, Chapter
11 Trustee, Appellee.

BAP No. SC–01–1121–RyBMa.
Bankruptcy No. 99–03999.
Adversary No. 01–90028.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Oct. 25, 2001.

Decided Jan. 7, 2002.

L. Scott Keehn, Robbins & Keehn, San Diego, CA, for David Morgan–Busby, Jennifer Morgan, Autolife USA, Inc.

Martin A. Eliopulos, Higgs, Fletcher & Mack, San Diego, CA, for Leslie T. Gladstone, Chapter 11 Trustee.

Before: RYAN, BRANDT, and MARLAR, Bankruptcy Judges.

## OPINION

RYAN, Bankruptcy Judge.

After David Morgan–Busby and Jennifer Morgan ("Debtors") filed a chapter 11 [1] petition, they claimed shares of stock (the "Shares") in Auto Life USA, Inc. ("Auto Life") as exempt under California law. Leslie T. Gladstone, the chapter 11 trustee ("Trustee"), later filed a complaint (the "Complaint") seeking to have the Shares turned over to the estate.

Trustee sought, and the bankruptcy court granted, a temporary restraining order (the "TRO") against Debtors and Auto Life (collectively, the "Defendants"), preventing them from either transferring the Shares or interfering with Trustee's investigation of the Shares' value. Later, the bankruptcy court granted a preliminary injunction against the Defendants (the "Injunction"). Defendants timely appealed the Injunction order (the "Order").·

We AFFIRM.

## I.   FACTS

On April 21, 1999, Debtors filed a chapter 11 petition.  The case was then con-

---

1. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

verted to chapter 13 and later reconverted to chapter 11. Upon reconversion, the United States trustee appointed Trustee.

On September 19, 2000, Debtors amended their schedules B and C, indicating that they owned the Shares and valued them at $10,838. The amended schedule B also referenced "Attachment C," which itemized how Debtors had valued the Shares.

Debtors' amended schedule C stated that they had "ADDED: 4,250 Shares of Auto Life Stock," and it also referenced "Attachment C." The amended schedule C valued the 4,250 shares at $10,838[2] and claimed that amount as exempt under "CCP § 703.140(b)(5)."[3] However, according to Attachment C, "Debtors own[ed] 4,250,000 or 85% of the issued shares" of Auto Life, and the value of each share was $0.00255, which yielded an aggregate value of $10,838 for all 4,250,000 shares. Amended Schedule C (Sept. 19, 2000), at Attach. C.

Apparently, by this exemption, Debtors intended "to cover as many shares of this stock as c[ould] be exempted by the Wild Card exemption (§ 703.140(b)(5))" and Debtors "reserve[d] the right to further amend Schedule C to achieve that purpose . . . ." *Id.* at 1. Thereafter, Trustee began investigating the value of the Shares. As part of this investigation, Trustee requested financial information from Auto

Life to substantiate Debtors' valuation. However, Auto Life required Trustee to enter into a confidentiality agreement before it would provide the information that Trustee had requested. At some point, Trustee entered into a confidentiality agreement with Auto Life.

On October 24, 2000, Trustee concluded the § 341(a) meeting of creditors. Subsequently, Trustee examined Debtors' exemption of the Shares, and Trustee determined that Debtors could rightfully exempt up to $10,838 of the proceeds from the Shares under C.C.P. § 703.140(b)(5). Therefore, Trustee did not object to Debtors' exemption.

On November 28, 2000, Trustee filed a Statement of Position, and Trustee indicated that she would not challenge Debtors' exemption. However, Trustee stated that she "reserve[d] her rights to challenge the valuation of the Auto Life stock." Statement of Position (Nov. 28, 2000), at 2. Trustee also indicated that, despite her requests for financial information to verify Debtors' valuation of the Shares, she "ha[d] been frustrated in her attempt to evaluate the Auto Life stock because she ha[d] not received any financial information regarding Auto Life from Auto Life itself or the Debtors." *Id.* Therefore, Trustee petitioned the bankruptcy court for instructions regarding the financial information that she had requested from

---

**2.** Apparently, $10,838 was all Debtors had left on their wild card exemption. *See* CAL. CIV. PROC. CODE § 703.140(b).

**3.** Section 703.140 of the California Code of Civil Procedure ("C.C.P.") provides that a debtor may exempt certain property. At the time Debtors filed their petition, C.C.P. § 703.140 provided in pertinent part that

(b) [t]he following exemptions may be elected . . . :

(1) The debtor's aggregate interest, not to exceed fifteen thousand dollars ($15,000) in value, in real property or personal property that the debtor or a dependent of the debtor

uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

. . . .

(5) The debtor's aggregate interest, not to exceed in value eight hundred dollars ($800) plus any unused amount of the exemption provided under paragraph (1), in any property.

CAL. CIV PROC. CODE § 703.140(b) (West Supp. 2001).

Debtors and Auto Life pertaining to the Shares.

In response, Debtors claimed that Trustee could no longer challenge the value of the Shares because she had not timely objected to their exemption, and as such, the Shares were no longer property of the estate. Thereafter, Trustee filed the Complaint seeking 1) turnover of estate property, 2) declaratory relief, and 3) injunctive relief. Essentially, Trustee sought authority to sell the Shares subject to Debtors' exemption.

Because the Defendants refused to produce financial information on Auto Life, Trustee moved for the TRO. In response, the Defendants revealed that Auto Life had issued additional shares which diluted Debtors' majority ownership interest in Auto Life to approximately 24%.[4] Debtors therefore became minority shareholders. The bankruptcy court subsequently issued the TRO.

Later, the bankruptcy court held a hearing on the Injunction. At the hearing, the bankruptcy court found that Trustee had a strong probability of prevailing on the merits. The bankruptcy court reasoned that despite Debtors' arguments to the contrary, binding precedent "strongly suggest[ed] that the Trustee ha[d] retained her ability to challenge the valuation that the Debtor [sic] ha[d] placed on the exemption." Tr. of Proceedings (Feb. 27, 2001), at 31. The bankruptcy court also found that Trustee would be irreparably harmed if the Injunction did not issue because of the possibility of further dilution of the Shares.

I think that a monetary remedy in view of the fact that in one paper the Debtor claimed it [sic] owned 85 percent and now the most recent filing on behalf of the corporation suggests that they only own 24 percent, at minimum it appears that leaving these shares in their hands is probably an unwise idea.

Tr. of Proceedings (Feb. 27, 2001), at 33. Therefore, the bankruptcy court issued the Injunction.

The Injunction prevented the Defendants from "(a) Selling, transferring, encumbering or otherwise making the Auto Life Stock unavailable for turnover to the Trustee; and (b) Directly or indirectly interfering in any manner with Trustee's investigation into the value of the Auto Life Stock." Order RE: Issuance of Prelim. Inj. (Mar. 7, 2001), at 2–3. After the Order was entered, Defendants timely appealed.[5]

## II.  ISSUE

Whether the bankruptcy court erred in granting the Injunction when it found that Debtors were not entitled to exempt the Shares even though Trustee failed to timely object.

## III.  STANDARD OF REVIEW

■ We review the bankruptcy court's grant of a preliminary injunction for an abuse of discretion. *See A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir.2001). A bankruptcy court abuses its discretion if it bases its ruling upon an erroneous view of the law or a clearly erroneous interpretation of the facts. *See Cooter & Gell v. Hartmarx*

---

**4.** It is not clear from the appellate record (the "Record") either when or to whom these additional shares were issued.

**5.** The Injunction is an interlocutory order, *see United States v. Roth*, 912 F.2d 1131, 1132

(9th Cir.1990), and the Defendants did not seek leave of court to pursue this appeal. However, after oral argument, we granted leave to appeal by a separate order.

*Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

■ If the appellant claims that the bankruptcy court relied on an erroneous legal premise in granting a preliminary injunction, then we review the underlying issue of law de novo. *See A & M Records*, 239 F.3d at 1013.

## IV. DISCUSSION

*The Bankruptcy Court Did Not Err in Granting the Injunction.*

The bankruptcy court issued the Injunction because Trustee demonstrated that 1) Trustee was likely to succeed on the merits and 2) the bankruptcy estate would be irreparably harmed if the Injunction did not issue. On appeal, the Defendants contend that the bankruptcy court erred in finding that Trustee was likely to prevail on the merits because the bankruptcy court erroneously applied the law in reaching its conclusion.

■ The traditional criteria for a preliminary injunction are "1) a strong likelihood of success on the merits, 2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, 3) a balance of hardships favoring the plaintiff, and 4) advancement of the public interest (in certain cases)." *Johnson v. Cal. State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir.1995) (citation and parenthesis omitted). Alternatively, a preliminary injunction may issue if the moving party demonstrates "(1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor." *A & M Records*, 239 F.3d at 1013 (citation omitted). Here, we review whether the bankruptcy court appropriately applied the alternative test requiring a showing of success on the merits and the possibility of irreparable harm.

■ In applying this test, the amount of irreparable harm and the probability of success on the merits are inversely related. "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *A & M Records*, 239 F.3d at 1013 (internal quotation marks and citation omitted). Debtors do not contest the bankruptcy court's finding of irreparable harm. Thus, we focus on the issue of Trustee's probability of success on the merits.

Section 541 provides that upon the filing of a bankruptcy petition, an estate is created that is comprised of "all legal or equitable interests of the debtor ...." 11 U.S.C. § 541(a)(1). However, § 522(1) allows a debtor to exempt certain property from the estate by providing in pertinent part that

> [t]he debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.

11 U.S.C. § 522(1). Any objection to the debtor's exemptions must be filed in compliance with Rule 4003(b), which provides in pertinent part that

> [a] party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the

time for filing objections if, before the time to object expires, a party in interest files a request for an extension.

FED. R. BANKR. P. 4003(b).

In *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), the Supreme Court held that the trustee's failure to timely object to the debtor's claimed exemption precluded him from later challenging the validity of that exemption. *Id.* at 642, 112 S.Ct. 1644. In *Taylor,* the debtor had disclosed an employment discrimination lawsuit on her schedules, listed its value as "unknown," and claimed its proceeds as exempt. *Id.* at 640, 112 S.Ct. 1644. However, both the debtor and the trustee agreed that the debtor could not properly exempt more than a small portion of any potential recovery. *Id.*

After some investigation, the trustee decided not to object to the exemption because he felt the lawsuit was of no value to the estate. Later, the lawsuit settled for $110,000, and the trustee objected to the debtor's exemption. *Id.* at 641, 112 S.Ct. 1644. In overruling the untimely objection, the Supreme Court reasoned that "Rule 4003(b) gives the trustee and creditors 30 days from the initial creditors' meeting to object. By negative implication, the Rule indicates that creditors [or the trustee] may not object after 30 days unless, within such period, further time is granted by the court." *Id.* at 643, 112 S.Ct. 1644 (internal quotation marks omitted). The Court further reasoned that "[d]eadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Id.* at 644, 112 S.Ct. 1644.

Nevertheless, since *Taylor,* not all failures to timely object to an improperly claimed exemption have led to the property at issue being held exempt. *See Seror v. Kahan (In re Kahan),* 28 F.3d 79, 83 (9th Cir.1994). For example, in *Kahan,* the debtor claimed a homestead exemption consistent with the provisions of state law, and the trustee did not object. *Id.* at 80. Years later, the debtor amended his schedules and increased the amount that he claimed as exempt to an amount that exceeded the provisions of state law. *Id.* After the trustee objected, the debtor argued that the trustee could not object after the 30–day period because the amendment merely clarified the original claim, and it was not a new claim. The debtor also claimed that *Taylor* precluded the trustee from filing a late objection and that the amended amount was exempt. *Id.* at 81–83. The Ninth Circuit rejected these arguments, holding that *Taylor* was distinguishable because the debtor's original filing did not clearly disclose that the debtor was attempting to exempt an amount in excess of what state law provided. *Id.* at 83. When the debtor amended the schedule, the time for the trustee to object was reopened. *See* FED. R. BANKR. P. 4003(b).

■ Here, Trustee argues for an additional exception to *Taylor* by distinguishing between an objection to an exemption itself and an objection to the value of property subject to an exemption. We first recognized this distinction in *Hyman v. Plotkin (In re Hyman),* 123 B.R. 342, 348 (9th Cir. BAP 1991) ("*Hyman I* "), and the bankruptcy court expressly relied upon this distinction in granting the Injunction. However, the Defendants contend that *Hyman I* was overruled by *Taylor.*

In *Hyman I,* the debtors claimed a homestead exemption of $45,000, which was the full amount allowed under state law. *See Hyman I,* 123 B.R. at 343. The trustee did not object to the exemption. However, he later sought to challenge the value that the debtors had assigned to their home, and he sought to sell the debtors' house. *Id.* The debtors argued that

they had exempted their home itself and not just the equity in their home. *Id.* at 345–46. The debtors also argued that the trustee could not challenge their exemption because the 30–day period provided in Rule 4003(b) had expired. *Id.* at 348.

We rejected both of the debtors' arguments in *Hyman I.* First, we determined that the debtors had only exempted the homestead equity in their home and not the home itself. *Id.* at 345–47. We also determined that there was a difference between objecting "to the *existence* of an exemption" and objecting "to the *valuation* of property subject to an exemption claim limited in dollar amount." *Id.* at 348. On the latter point, we held that Rule 4003(b) only barred a challenge to the validity of the claimed exemption itself, and it did not bar a challenge to the valuation of the property subject to the exemption. *Id.*

While we decided *Hyman I* before the Supreme Court's decision in *Taylor,* the Ninth Circuit affirmed *Hyman I* after *Taylor* had been decided. *See Hyman v. Plotkin (In re Hyman),* 967 F.2d 1316 (9th Cir.1992) ("*Hyman II*").[6] In affirming, the Ninth Circuit did not address the distinction that we had drawn between objecting to the value of the property subject to an exemption and objecting to the exemption itself.

In *Hyman II,* the debtors argued that they had actually exempted their home and not just money, capped at the statutory maximum for homesteads. *See Hyman II,* 967 F.2d at 1319. The Ninth Circuit rejected this claim. The court relied on the plain language of the statute and held that California law did not allow the debtors to exempt their home. Rather, it limited their exemption to $45,000 in proceeds from a sale of their home. *Id.* at 1321.

Moreover, the debtors listed "homestead" on their schedules and valued it at $45,000, which was the amount permitted by state law. *Id.* at 1319. The Ninth Circuit noted that it construed ambiguities in the debtors' schedules against them. *Id.* at n. 6. Therefore, the Ninth Circuit focused on the ambiguity in the debtors' schedules and stated that if the debtors were attempting to exempt the home, and not $45,000, then they had not adequately placed the trustee on notice. This was so because $45,000 was the exemption amount properly allowed by state law. "Thus, the trustee had no basis for objecting, and could well have suffered the bankruptcy judge's ire had he objected to the $45,000 exemption to which the Hymans were clearly entitled." *Id.* at 1319.

Finally, the debtors argued that their exemption actually provided them with an equity claim in their home, and therefore, they were entitled to any appreciation that had occurred postpetition. *Id.* at 1321. The Ninth Circuit also rejected this argument, holding that the California statute gave the debtors an exemption as of the time of sale, and not an equity interest in the property. *Id.*

In *Canino v. Bleau (In re Canino),* 185 B.R. 584 (9th Cir. BAP 1995), the debtor scheduled her home, valued it at $175,000, and then claimed $155,053.57 exempt under California law. *Id.* at 587. The debtor's exemption claim facially exceeded the amount permitted under California law. The trustee did not object to the debtor's exemption. However, the trustee sought to sell the debtor's house and pay the debtor $50,000, which was the amount provided for under California law. *Id.* at 588. The bankruptcy court held that the actions taken by the trustee constituted an infor-

---

**6.** . While *Hyman II* was decided only shortly after *Taylor,* it is clear that the Ninth Circuit considered *Taylor* in reaching its conclusion. *See Hyman II,* 967 F.2d at 1319 n. 6.

mal objection to the value of the debtor's exemption. Therefore, the bankruptcy court held that the debtor was only entitled to $50,000. *Id.* at 589.

On appeal, we reversed the bankruptcy court. *Id.* at 595. There, we reasoned that *Taylor* required us to strictly read the requirements of Rule 4003(b). While we stated that *Taylor* was factually dissimilar, we noted that *Taylor* stood for the proposition that objections to an exemption must be filed within 30 days and a bankruptcy court may not "use equitable considerations to allow untimely objections." *Id.* at 591. Thus, we implicitly held that an objection to the value of property subject to an exemption must satisfy the time constraints of Rule 4003(b).

Nonetheless, here, Trustee argued, and the bankruptcy court agreed, that *Alderman v. Martinson (In re Alderman)*, 195 B.R. 106 (9th Cir. BAP 1996), continues to allow a trustee to object to the value of property subject to an exemption after the 30–day period prescribed by Rule 4003(b). However, *Alderman* does not support this position.

In *Alderman*, the debtors filed a chapter 13 petition, and they claimed a homestead exemption in a house in which they were 12% owners. The trustee untimely objected to the exemption, and the bankruptcy court held that under *Taylor* the exemption could not be challenged. *Id.* at 107. Later, the debtors converted their case to chapter 7, and their home was sold. In the closing papers for the sale of the home, the debtors claimed a 14% ownership interest in the house. Therefore, the chap-

ter 7 trustee sought a determination of the actual amount of the debtors' homestead exemption. The trustee argued that state law provided for a $40,000 homestead exemption and that the debtors were limited to either 12% or 14% of that amount. The debtors countered that under *Taylor* the trustee could no longer challenge the value of their exemption, and thus, they claimed that they were entitled to the full $40,000. *Id.* at 108.

In *Alderman*, we recognized that there was a line of authority that held that a trustee could object to the value of property subject to an exemption without objecting to the exemption itself. *Id.* at 111. There, we cited *Hyman I* as illustrative of this line of authority, and we stated that it stood for the proposition that "a motion to value an exemption [7] is not bound by the 30 day bar of Rule 4003." *Id.*[8]

However, we did not rely on this line of authority in reaching our conclusion in *Alderman*. *Id.* at 111. We stated that

> [r]egardless [of this line of authority], the manner in which the exemption was valued [wa]s inherently ambiguous and call[ed] for valuation at some point in the proceeding. When debtors claim an exemption at the "maximum allowed," that can only mean that maximum allowed by law. Montana law clearly provides that a claimant's homestead exemption is limited to an amount proportional to his ownership interest in the property.

*Id.* In other words, we relied on the separate line of authority that holds that

---

7. In context, it is clear that the phrase "motion to value an exemption" means a motion to value property that is subject to an exemption. *See Alderman*, 195 B.R. at 111.

8. We also cited *In re Ross*, 128 B.R. 785 (Bankr.C.D.Cal.1991), as standing for the same proposition. *See Alderman*, 195 B.R. at

111. In *Ross*, the bankruptcy court held that a trustee could permissibly seek a determination of the value of property subject to an exemption after the 30–day period provided for in Rule 4003(b) had expired. *See Ross*, 128 B.R. at 789. *Ross* was decided before *Taylor*.

ambiguous exemptions are not subject to Rule 4003(b). *See Moldo v. Clark (In re Clark)*, 266 B.R. 163, 170 (9th Cir. BAP 2001) (explaining that *Alderman* was an example of an ambiguous claim of exemption).

We now make explicit our implicit holding in *Canino*. Given *Taylor*, a distinction can no longer be drawn between objecting to an exemption itself and objecting to the value of property subject to an exemption. All objections to exemptions are subject to Rule 4003(b). *Taylor* made it clear that the purpose for the short objection period in Rule 4003(b) is to encourage finality. *See Taylor*, 503 U.S. at 644, 112 S.Ct. 1644. Allowing a trustee to distinguish between an objection to an exemption itself and the value of the property subject to that exemption does not promote finality.

■ Nonetheless, here, *Hyman II* is controlling.[9] Debtors contend, as did the debtors in *Hyman II*, that Trustee is not entitled to sell the Shares. However, Debtors are mistaken. *Hyman II* makes it clear that Trustee has the right to sell property that Debtors claim as exempt. *See Hyman II*, 967 F.2d at 1320. *Hyman II* indicates that California's exemption laws do not provide Debtors with an unassailable ownership interest in exempt property, such as the Shares. Rather, it restricts Debtors' exemption to the proceeds from a sale of the Shares, up to the statutory maximum. *Id.* at 1321. Accordingly, it provides Debtors with a right to the first $10,838 in any sale proceeds.

We note that, at the time Debtors filed their petition, C.C.P. § 703.140(b)(5) limited Debtors to $800 plus any unused amount of any exemption under (b)(1). As in *Hyman II*, Trustee accepted the item

and amount of the exemption, but by operation of law reserved the right to administer the Shares to the extent that the Shares could be sold at a price that exceeded this amount. In that way, Trustee could preserve any excess value above the allowed exemption for creditors of the estate.

■ Finally, even if California law allowed Debtors to exempt the Shares and not just the amount of their exemption, Debtors could not do so in this case because their schedules were ambiguous. Because Debtors control their schedules, we construe any ambiguities in the schedules against them. *See Clark*, 266 B.R. at 168.

First, Debtors stated in their amended schedule C that 4,250 shares were worth $10,838. Debtors' amended schedule C also referenced Attachment C, which contained an itemization of Debtors' valuation of the Shares. On Attachment C, Debtors indicated that 4,250,000 shares were worth $10,838. Therefore, Debtors' schedules were internally inconsistent.

The ambiguity in Debtors' schedules is further evidenced by Debtors' attempted reservations of rights. Debtors admitted that they did not know the actual value of the Shares. However, they wanted all the Shares covered by their $10,838 wild card exemption. Therefore, Trustee had no way to determine the number of the Shares that should have been covered by the exemption. However, regardless of the number of Shares owned by Debtors, they could only exempt them up to $10,838 in sales proceeds.

9. Because we are addressing an issue of law, we may affirm on any basis reasonably supported by the Record, even when the basis for our affirmance was not expressly considered by the bankruptcy court. *See Fernandez v. GE Capital Mortgage Servs., Inc. (In re Fernandez)*, 227 B.R. 174, 177 (9th Cir. BAP 1998).

Moreover, Debtors did not expressly state that they wanted to exempt the Shares and not just their value, as was the case in *Taylor*'s lawsuit. Nonetheless, like the debtors in *Hyman II*, Debtors now contend that they actually exempted the Shares by listing them on their schedules and valuing them at $10,838. By claiming a value of $10,838, Debtors used all the value that they had remaining on their wild card exemption. However, by listing the Shares at a specific value in order to exempt the Shares, Debtors created an ambiguity in their schedules if it was their intention to actually exempt the property itself. *See Hyman II*, 967 F.2d at 1319.

For these reasons, Debtors cannot prevent Trustee from selling the Shares. When Trustee sells the Shares, then Debtors will have the right to the proceeds from the sale up to the claimed exemption of $10,838. *Id.* at 1320.

Therefore, Trustee is likely to prevail on the merits, and we cannot say that the bankruptcy court abused its discretion in granting the Injunction.

## V. CONCLUSION

In sum, the bankruptcy court did not err in granting the Injunction.

AFFIRMED.