FILED

OCT 31 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.    EC-12-1168-KiDJu |
| ) | |
| JERRY SLATES, ) | Bk. No.    10-22970-CMK |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| JERRY SLATES, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| JOHN W. REGER, Chapter 7 ) | |
| Trustee, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on October 19, 2012,
at Sacramento, California

Filed - October 31, 2012

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Christopher M. Klein, Chief Bankruptcy Judge, Presiding

_____

Appearances:    Todd M. Peterson, Esq., argued for appellant, Jerry
                Slates; Michael Paul Dacquisto, Esq., argued for
                appellee, John W. Reger, chapter 7 trustee.

_____

Before: KIRSCHER, DUNN, and JURY, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellant, chapter 7[2] debtor Jerry Slates ("Slates"), appeals the bankruptcy court's order approving the chapter 7 trustee's motion to approve the compromise and sale of Slates's claim against his former employer, the State of California Department of Forestry and Fire Protection ("Cal Fire"), and his former supervisor, Steve Gassaway ("Gassaway").  We conclude that the asset at issue was property of the estate and not exempt, and to that extent, we AFFIRM the bankruptcy court's ruling.  However, because the bankruptcy court did not make adequate findings to support the settlement and sale of the asset, we VACATE and REMAND that portion of the order with instruction that the bankruptcy court enter the required findings.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A.    Events prior to the settlement and sale.**

Slates filed a chapter 7 bankruptcy case on February 8, 2010. In his accompanying Schedule B, Slates listed an interest in "possible disability benefits from Cal Fire (former employer) administrative action pending.  Handled by Law Offices of Gay Carroll, 770 L Street, #950, Sacramento, CA."  Item 4 in Slates's Statement of Financial Affairs ("SOFA")(suits and administrative proceedings) disclosed, among other things, an "administrative proceeding to be filed" by attorney Gay Carroll against Cal Fire and Gassaway for "violation of Calif Fair Employment & Housing Act re: debtor's disability."  Chapter 7 trustee and appellee, John W. Reger ("Trustee"), was appointed to Slates's case.

---

[2] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

On February 17, 2010, Slates filed an Amended Schedule C claiming as exempt the "possible disability benefits from Cal Fire (former employer) administrative action pending. Handled by Law Offices of Gay Carroll, 770 L Street, #950, Sacramento, CA." Slates claimed this asset was exempt under CAL. CODE CIV. PROC. ("CCP") § 703.140(b)(10)(C)[3] with an "unknown" value. Slates did not exempt the "administrative proceeding to be filed" listed in Item 4 of his SOFA. At no time did Trustee file an objection to Slates's claimed exemption for the "possible disability benefits" listed in his Schedule C.

The first meeting of creditors was held on April 14, 2010, and was continued to May 12, 2010. The gist of the May 12 meeting was to deal with a vacant lot in which Slates owned a one-half interest with his former wife. Slates's interest in the vacant lot was eventually transferred to Trustee for the benefit of the estate. After dealing with questions about the vacant lot and other issues related to Slates's dissolution proceeding, Trustee declared that he was "satisfied with the record," and that he was "going to conclude this matter." 341(a) Meeting Tr. (May 12, 2010) 10:18-21. Trustee does not dispute that he never asked Slates about his exemption for "possible disability benefits" or about the "administrative proceeding to be filed" against Cal Fire and Gassaway for "violation of Calif Fair Employment & Housing Act re: debtor's disability."

On April 5, 2010, about one month prior to the continued § 341(a) meeting and two months after filing his chapter 7

---

[3] CCP § 703.140(b)(10)(C) allows a debtor to exempt the right to receive a "disability, illness, or unemployment benefit."

-3-

bankruptcy petition, Slates filed two identical complaints ("Complaints") for Discrimination, one against Cal Fire and one against Gassaway, with the California Department of Fair Employment and Housing (the "DFEH"). The Complaints asserted that based on actions occurring one year earlier on April 6, 2009, Slates had claims against Cal Fire and Gassaway for constructive discharge, denial of accommodation, failure to prevent discrimination or retaliation, and retaliation. Specifically, the Complaints stated:

> Jerry Slates was forced to resign his position and retire due to the hostile, discriminatory and threatening manner in which his supervisor, Steve Gassaway, treated him. Gassaway discriminated against Slates based on his mental disability, his age, and his physical disability. Gassaway created such a hostile work environment that it became impossible for a reasonable person in Jerry Slates' position to continue working under Gassaway.

Slates requested and received an immediate "right to sue" letter from the DFEH, which authorized him to litigate his claims in court. Any such litigation had to be filed within one year from the date of the letter - i.e., before April 5, 2011.

On May 13, 2010, Trustee filed a Notice of Assets instructing creditors to file proofs of claim by no later than August 13, 2010. Presumably, this was based on his recovery of Slates's one-half interest in the vacant lot. Slates received his discharge on June 14, 2010.

On April 4, 2011, Slates commenced his suit in state court against Cal Fire and Gassaway, asserting claims under the California Fair Employment and Housing Act for Discrimination, Retaliation, Failure to Accommodate, and Wrongful Termination (the "State Court Action"). Slates sought general, compensatory, and

-4-

special damages, as well as attorney's fees and costs. In September 2011, Slates filed an amended complaint against these same defendants after Cal Fire's demurrer was sustained with leave to amend. The amended complaint alleged the same claims and requested the same damages. Nothing in the record indicates that Trustee was aware of the Complaints filed with the DFEH or the State Court Action.

On May 9, 2011, Trustee filed his Final Report and Application for Compensation (the "TFR"). The TFR stated that "[a]ll scheduled and known assets of the estate have been reduced to cash, released to the debtor as exempt property pursuant to 11 U.S.C. § 522, or have been or will be abandoned pursuant to 11 U.S.C. § 554." Exhibit A reflected the disposition of "all property of the estate." The TFR indicated that Slates's estate was administratively insolvent, as it could not even cover his former wife's priority claim of over $100,000. No objections were filed. After a brief hearing, a Civil Minute Order approving the TFR was entered on September 14, 2011.

**B.    The settlement and sale of the State Court Action.**

In late 2011, Cal Fire learned of Slates's bankruptcy and contacted Trustee to settle the State Court Action. The parties entered into a Settlement Agreement and Release in or about December 2011. It is undisputed that neither Slates nor his counsel were contacted regarding the settlement negotiations.

On January 17, 2012, Trustee moved for approval of (1) the compromise and settlement of the bankruptcy estate's claims against Cal Fire and Gassaway in the State Court Action, and (2) the sale of the estate's interest in the State Court Action

-5-

for $20,000 (the "Settlement/Sale Motion"). In short, Trustee contended that because the State Court Action had not been properly scheduled nor exempted, it was property of the estate. Specifically, contended Trustee, the State Court Action was never identified on Slates's Schedule B in such a way to provide Trustee with notice of the claims being asserted or the relief being sought. Trustee contended that the description in Slates's Schedule B of "possible disability benefits" when compared to the relief sought in the State Court Action (medical and related expenses, loss of income and benefits, general damages, emotional distress damages, and attorney's fees) demonstrated that the description provided by Slates was inaccurate and substantially misleading. Trustee also argued that Slates's exemption of "possible disability benefits" in his Schedule C could not reasonably be interpreted to mean the claims set forth in the State Court Action.

To establish the factors for settlement under Martin v. Kane (In re A & C Props.), 784 F.2d 1377, 1380 (9th Cir. 1986) ("A & C"), Trustee asserted that the probability of success of the State Court Action was unknown due to the factually complex and highly disputed nature of discrimination cases. Trustee noted that Slates had waited until the last day before the statute of limitations expired before filing the necessary claim form with the DFEH, and he waited until the last day before the statute of limitations expired before filing the State Court Action, which indicated the claims were weak. Counsel for Cal Fire had advised Trustee that Slates's case was a "nuisance" and lacked merit. Further, according to Trustee, Slates had not provided Trustee

-6-

with any information showing the State Court Action had merit above the amount being offered to settle. Ability to collect on any potential judgment was likely not an issue. As for the complexity of the litigation, Trustee contended that many factual disputes existed in the matter, and the cost of pursuing the State Court Action would greatly exceed any potential benefit. Further, the estate had no funds to hire expert witnesses or to retain counsel to pursue the matter, and, because the State Court Action was only at the complaint stage, the time necessary to conclude it would be substantial. Therefore, this fair settlement would provide funds to the estate much faster than if litigation were pursued. Finally, Trustee asserted that the settlement would produce a significant distribution to creditors.

In addition to the settlement, Trustee also sought approval for the sale of the State Court Action to the defendants under § 363(b)(1). Per the terms of the sale, Slates (or any third party) could overbid Cal Fire's $20,000 bid. Trustee asserted that sound business reasons existed for selling the State Court Action. It would generate at least $20,000, or more if Slates overbid. Further, in Trustee's opinion, the selling market for this type of asset was very limited, and Cal Fire's offer of $20,000 was fair and reasonable.

Slates opposed the Settlement/Sale Motion. In short, he contended that the State Court Action belonged to him because Trustee either abandoned or released it. Specifically, Slates argued that the description in his Schedule B of "possible disability benefits" from Cal Fire put Trustee on notice that the nature of the asset should be explored. Further, argued Slates,

-7-

he did not know at the time he filed his Schedule B in February 2010, which was long before he filed the State Court Action in April 2011, what damages or relief would be sought in the future litigation. Slates also argued that his listing of the "administrative proceeding to be filed" in Item 4 of his SOFA provided sufficient notice to Trustee that potential claims existed against Cal Fire and Gassaway. Slates contended that Trustee had plenty of time - at least 13 months between the time of the final § 341(a) meeting and the filing of the TFR - to conduct an investigation or inquiry about the matter, and he failed to do so.

Slates also disputed Trustee's contention that the State Court Action had never been exempted, arguing that it was listed as an asset and claimed exempt under CCP § 703.140(b)(10)(C) since it arose out of his employment and was related to a disability. Because Trustee never timely objected to the claimed exemption under Rule 4003, Slates argued the State Court Action was exempt and not property of the estate.

In his supporting declaration, Slates stated that his bankruptcy attorney advised him to list his claims against Cal Fire and Gassaway as an asset, and, to the extent the possible claim arose out of a claim for disability, it would be exempt. Slates further stated that, as a lay person, he was not familiar with the theories of legal recovery, and he disclosed the existence of what he thought were disability claims against the defendants in his bankruptcy schedules as instructed.

In his reply, Trustee contended that Slates's interest in the administrative claims against the defendants, which resulted in

-8-

the State Court Action, became property of the estate under § 541(a) when Slates filed his bankruptcy case, and the claims still belonged to the estate because they had never been abandoned and the case had not yet been closed by final decree. Trustee agreed that any disability payments Slates might be entitled to would be exempt, but disputed that the damages sought in the administrative proceeding and subsequent State Court Action constituted "a disability, illness or unemployment benefit" under CCP § 703.140(b)(10)(C).

On the same day Trustee filed his reply, Slates filed a second opposition to the Settlement/Sale Motion. In sum, Slates argued that the Settlement/Sale Motion should be denied because: (1) Trustee was put on notice of the asset; (2) he did not administer it in a timely manner; (3) he did not timely object to the exemption of the asset; (4) he did not seek a continuance or ask for additional time to inquire about the asset; (5) the TFR stated that all assets had been liquidated, released, or abandoned or would be abandoned; and (6) the nature of Slates's claims in the State Court Action arose from a disability, which was created by the alleged harassment and verbal abuse he endured from Gassaway. Slates again noted his lack of sophistication about legal matters and argued that he had no idea at the time he filed his bankruptcy case what damages or grounds for relief he might assert in a future lawsuit against Cal Fire and Gassaway.

The Settlement/Sale Motion was heard on February 14, 2012. The parties agreed that no facts were in dispute and that no testimony was necessary. The bankruptcy court took the matter under advisement, stating that it wanted to "take a harder look at

-9-

the record . . . ." Hr'g Tr. (Feb. 14, 2012) 5:12. The court stated that it would either enter its findings and conclusions orally on the record on March 6, 2012, or issue a written decision beforehand. Id. at 5:13-20. The record reflects that no hearing occurred on March 6, 2012.

The bankruptcy court entered its half-page written order approving the Settlement/Sale Motion on March 12, 2012 (the "Settlement/Sale Order"). The court, without explanation, found that the State Court Action was property of the estate and not exempt. The court granted the motion as a fair and equitable compromise, taking into account the probability of success in litigation, difficulties, if any, in matters of collection, expense, inconvenience, and delay of litigation, and that it was in the best interest of creditors. The court also granted the motion as an appropriate sale of the State Court Action, considering that Slates declined to participate in an auction and no other third party expressed an interest. Slates timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (N). We have jurisdiction under 28 U.S.C. § 158.[4]

## III. ISSUES

1. Did the bankruptcy court err when it determined that the State Court Action was property of the estate and not exempt?

_____

[4] Although no stay pending appeal has been requested or entered, Trustee informed the Panel at oral argument that the State Court Action has not been dismissed and that he still holds the proceeds from the settlement/sale of the State Court Action.

-10-

2. Did the bankruptcy abuse its discretion in approving the Settlement/Sale Motion?

## IV. STANDARDS OF REVIEW

Whether property is property of the estate is a question of law reviewed de novo. Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 432 B.R. 812, 818 (9th Cir. BAP 2010); Moldo v. Clark (In re Clark), 266 B.R. 163, 168 (9th Cir. BAP 2001). We also review exemption determinations de novo. Goswami v. MTC Distrib. (In re Goswami), 304 B.R. 386, 389 (9th Cir. BAP 2003). De novo means review is independent, with no deference given to the trial court's conclusion. In re Mwangi, 432 B.R. at 818.

We review a bankruptcy court's decision to approve a compromise for abuse of discretion. Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.), 292 B.R. 415, 420 (9th Cir. BAP 2003)(citing A & C, 784 F.2d at 1380). Sales under § 363 are also reviewed for abuse of discretion. In re Clark, 266 B.R. at 168. A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible, or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

**A. Is the State Court Action property of the estate? Is it exempt?**

Before Trustee could have settled and/or sold the State Court Action, it must have been property of the estate and not exempt. No one disputes that the State Court Action was, initially, property of the estate. See Sierra Switchboard Co. v.

-11-

<u>Westinghouse Elec. Corp.</u>, 789 F.2d 705, 708 (9th Cir. 1986) (property of the estate includes prepetition causes of action); § 541(a). However, Slates contends that the State Court Action was exempt and not subject to settlement or sale.

Exempt property is property of the estate a chapter 7 trustee cannot liquidate or distribute to creditors because it has been withdrawn from the estate for the benefit of the debtor. <u>S & C Home Loans, Inc. v. Farr (In re Farr)</u>, 278 B.R. 171, 177 (9th Cir. BAP 2002)(citing <u>Owen v. Owen</u>, 500 U.S. 305, 308 (1991)). California has opted out of the federal exemption scheme and has limited debtors to the exemptions available under state law. <u>Wolfe v. Jacobson (In re Jacobson)</u>, 676 F.3d 1193, 1198 (9th Cir. 2012). California exemption statutes are to be liberally construed in favor of the debtor. <u>Turner v. Marshack (In re Turner)</u>, 186 B.R. 108, 113 (9th Cir. BAP 1995).

Trustee does not dispute that if the State Court Action constitutes a "disability benefit" under CCP § 703.140(b)(10)(C) it was exempt from the estate. The question here is whether Slates successfully exempted the State Court Action. The bankruptcy court summarily found, without explanation, that he did not. However, this is a question of law we review de novo.

Slates contends that the State Court Action was exempt because: (1) he listed it in good faith on his Amended Schedule C; (2) he described it sufficiently, at least what he knew at the time, to put Trustee on notice of what he was claiming exempt; (3) Trustee had a duty to investigate the matter and failed to do so; and (4) Trustee failed to object to the exemption.

-12-

**1. Rule 4003 and Taylor v. Freeland & Kronz.**

Rule 4003(a) specifies the procedure for claiming exemptions, requiring the debtor to "list the property claimed as exempt . . . on the schedule of assets required to be filed by Rule 1007." See also § 522(l)("The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section."). Parties in interest, including a chapter 7 trustee, have 30 days after the conclusion of the § 341(a) meeting of creditors (or 30 days after any amendment to the list of exemptions) to file objections to the debtor's claimed exemptions.[5] Rule 4003(b)(1). Absent an objection, the property claimed exempt is exempt, even if "the debtor had no colorable basis for claiming the exemption." Taylor v. Freeland & Kronz., 503 U.S. 638 (1992).

In Taylor, the chapter 7 debtor disclosed a prepetition employment discrimination suit that was pending in state court at the time her bankruptcy case was filed. Id. at 640. In her Schedule C, the debtor claimed the "[p]roceeds from lawsuit - [Davis] v. TWA" and "[c]laim for lost wages" as exempt. Id. She listed the value of the claimed exemption as "unknown." During the course of the § 341(a) meeting of creditors, the debtor indicated that the lawsuit might be worth $90,000 to $110,000. Under applicable law, she would have been entitled to exempt only a small amount of the lawsuit proceeds. The chapter 7 trustee decided not to object to the claimed exemption because he doubted

---

[5] There is an exception to this rule. If the debtor fraudulently asserted a claim of exemption, a trustee may file an objection "at any time prior to one year after the closing of the case." Rule 4003(b)(2). Trustee has never alleged Slates acted fraudulently in claiming the exemption.

-13-

the lawsuit had any value. Ultimately, the debtor settled the lawsuit for $110,000. Id. at 640-42. The trustee then demanded turnover of the money, asserting that it was property of the bankruptcy estate. The Supreme Court held that the trustee's failure to object to the claimed exemption within the 30-day period prescribed by Rule 4003(b) entitled the debtor to retain all the proceeds of the lawsuit, even though she had no legitimate statutory basis for claiming the exemption. Id. at 639, 642.

The Ninth Circuit has consistently recognized the strict application of the 30-day limit for objections to exemptions required by Taylor. See Hyman v. Plotkin (In re Hyman), 967 F.2d 1316, 1319 n.6 (9th Cir. 1992)("Unless there is a timely objection from a party in interest, any property claimed as exempt by a debtor - regardless of whether the claimed exemption is valid - is automatically exempt under section 522(l)."); Seror v. Kahan (In re Kahan), 28 F.3d 79, 83 (9th Cir. 1994)("In Taylor, the Supreme Court held that where the trustee fails to object timely to a claimed exemption, he cannot later contest the exemption, 'whether or not [the debtor] had a colorable statutory basis for claiming it.'"); Bernard v. Coyne (In re Bernard), 40 F.3d 1028, 1031 (9th Cir. 1994), cert. denied, 514 U.S. 1065 (1995)(holding same); Preblich v. Battley, 181 F.3d 1048, 1052 (9th Cir. 1999) (quoting Taylor for the proposition that "after time to file objection has run, exemption cannot be contested, 'whether or not [the debtor] had a colorable statutory basis for claiming it.'").

Likewise, this Panel has applied the same strict standard. Morgan v. FDIC (In re Morgan), 149 B.R. 147, 151 (9th Cir. BAP 1993)("Under Taylor, even an exemption claim that is totally

-14-

baseless will result in the property at issue being exempt if neither the trustee nor another party in interest timely objects to the exemption."); Canino v. Bleau (In re Canino), 185 B.R. 584, 595 (9th Cir. BAP 1995)("The bankruptcy court's broad equitable power does not enable it to carve out an exception to Taylor's strict construction of § 522(l) and [Rule] 4003[.]"); Heintz v. Carey (In re Heintz), 198 B.R. 581, 584 (9th Cir. BAP 1996)(all property listed as exempt on debtor's schedules became exempt even though the debtor may have had no colorable basis for claiming the exemptions); Spenler v. Siegel (In re Spenler), 212 B.R. 625, 629 (9th Cir. BAP 1997)(Taylor "holds that if no objection is filed within the 30-day period prescribed by Rule 4003(b) the debtor's claimed exemption is valid."); Morgan-Busby v. Gladstone (In re Morgan-Busby), 272 B.R. 257, 265 (9th Cir. BAP 2002)("Taylor made it clear that the purpose for the short objection period in Rule 4003(b) is to encourage finality. . . . Allowing a trustee to distinguish between an objection to an exemption itself and the value of the property subject to that exemption does not promote finality.").

We note, however, that neither this Panel nor the Ninth Circuit has interpreted Taylor as holding that failure by the trustee to object to a claim of exemption will always result in the debtor being entitled to a full exemption in the subject property. For example, the property may not be exempt if the debtor's schedules are ambiguous. In re Hyman, 967 F.2d 1316. In Hyman, the debtors claimed a homestead exemption in the amount of $45,000, consistent with California law which limited the exemption amount to $45,000. Nevertheless, the debtors contended

-15-

that their description of the exemption as merely "homestead" instead of "homestead exemption" indicated that they were claiming as exempt the entire homestead, notwithstanding California law. Debtors contended that the trustee's failure to object to the claim of exemption within 30 days rendered the real property fully exempt, even though no basis in the law existed for the exemption. Id. at 1319. The Ninth Circuit disagreed, holding that the debtors did not gain an exemption in the entire homestead simply because the trustee failed to object to their claim. Reviewing the debtors' schedules, the court stated:

> The Hymans' schedule of exempt property listed 'homestead' as an exemption under Cal. Civ. Proc. Code § 704.720, and valued the exemption at $45,000. Based on this information, the Hymans did not sufficiently notify others that they were claiming their entire homestead as exempt property; their schedule only gave notice that they claimed $45,000 as exempt, which is the proper amount of their homestead allowance under sections 704.720 and 704.730. Thus, the trustee had no basis for objecting, and could well have suffered the bankruptcy judge's ire had he objected to the $45,000 exemption to which the Hymans were clearly entitled.

Id. (internal citation omitted)(emphasis added). Recognizing the short time to object to exemptions under Rule 4003(b), the Hyman court noted that trustees and creditors must be able to determine precisely whether a listed asset is validly exempt simply by reading a debtor's schedules. Id. at 1319 n.6; see In re Mohring, 142 B.R. 389, 395 (Bankr. E.D. Cal. 1992), aff'd, 153 B.R. 601 (9th Cir. BAP 1993), aff'd, 24 F.3d 247 (9th Cir. 1994)(same). "Given that the debtor controls the schedules, we construe any ambiguity therein against him." Hyman, 967 F.2d at n.6. See also In re Kahan, 28 F.3d at 82 (citing Hyman and holding same); In re Pickering, 195 B.R. 759, 762-63 (Bankr. D. Mont. 1996)(court

-16-

must construe any ambiguities with regard to the information, or lack thereof, in a debtor's schedules or statements of affairs against the debtor as both the drafter of the documents and as the party most familiar with the information required by them); In re Mohring, 142 B.R. at 394 n.14 (ambiguities in schedules must be construed against the debtor).[6]

We reached a similar result in In re Clark. There, the debtor described property claimed as exempt as "five lots listed in qualified retirement plan[.]" 266 B.R. at 165. Turns out, no such retirement plan existed, and the property was owned by an entity other than the debtor. Id. at 170-71. Relying on Hyman and its progeny, we held that because the debtor's exemption claim was "ambiguous and imprecise," the subject property was not automatically exempt under Taylor when no timely objection was filed. Id. Accord In re Morgan-Busby, 272 B.R. at 265 (ambiguous exemptions are not subject to Rule 4003(b)).

Therefore, under Hyman and its progeny, "in order to determine whether a debtor is entitled to a full exemption in the property upon the trustee's failure to object, the court must inquire whether the information that the debtor provided in his or her Schedule C should have put the trustee on notice that he or she ought to have filed an objection to a claim of exemption." In re Hurdle, 240 B.R. 617, 624 (Bankr. C.D. Cal. 1999).

---

[6] In a more recent case on this issue, the U.S. Supreme Court emphasized that neither the trustee nor the bankruptcy court need to struggle to divine a debtor's "intent" underlying claimed exemptions or look beyond the face of Schedule C to figure out what the debtor "meant" to exempt. See Schwab v. Reilly, 130 S.Ct. 2652, 2665 (2010)("Taylor does not rest on what the debtor 'meant' to exempt.").

-17-

**2. The State Court Action is property of the estate and not exempt.**

We conclude that Slates's description of the State Court Action as listed in his Schedule C is ambiguous, and we must construe that ambiguity against him. Describing the State Court Action as "possible disability benefits" did not put Trustee on notice that Slates was actually exempting the proceeds from any potential recovery he received in his suit against Cal Fire and Gassaway, or that Trustee ought to have filed an objection to the claimed exemption. Slates implied only that he was exempting "disability benefits," which even Trustee admits would be fully exempt under California law. The Complaints, filed one month prior to the continued § 341(a) meeting and just shy of two months after Slates filed his bankruptcy petition, assert claims for discrimination, constructive discharge, and retaliation. Such causes of action sound in tort as opposed to a "disability benefit" claim, even if the reason Slates left Cal Fire was the alleged disability his employment there caused him and Cal Fire's failure to accommodate. Slates's claims against Cal Fire and Gassaway could not reasonably be construed to constitute exempt disability benefits under California law. Notably, the damages Slates requested in the State Court Action make no reference to any damages for disability benefits.

Even assuming at the time Slates filed his bankruptcy case he did not know what claims he would be asserting in his future suit against Cal Fire, which is questionable, it is reasonable to assume that his attorney did. In any event, by the time Slates filed the Complaints, which was just six weeks after filing his

-18-

Amended Schedule C, it was clear he was seeking something other than disability benefits. In that case, he had a duty to file amended schedules. Searles v. Riley (In re Searles), 317 B.R. 368, 378 (9th Cir. BAP 2004)(every debtor has a continuing duty to assure the accuracy and completeness of schedules, which implies a duty to amend).

Slates has not provided us with any valid reason why Trustee's reading of his Amended Schedule C was unreasonable, or, put another way, why the information provided should have put Trustee on notice that he ought to have objected to Slates's claim of exemption for the State Court Action. Based on Slates's description of the State Court Action, Trustee was unable to determine the validity of that exemption simply by reading Slates's schedules. Hyman, 967 F.2d at 1319 n.6.

Slates also contended before the bankruptcy court that the State Court Action was not property of the estate subject to settlement or sale because Trustee had abandoned it. While Slates does not appear to be raising that specific argument on appeal, he continues to refer to the TFR in which Trustee stated he was abandoning or would be abandoning all scheduled and known assets, and he complains of Trustee's lack of diligence in filing the TFR and/or investigating the State Court Action. In other words, Slates contends that Trustee should be equitably estopped from claiming ownership of the State Court Action.

Abandonment has jurisdictional implications. When a property is abandoned, it reverts to the debtor as if no bankruptcy petition had been filed. Hopkins v. Idaho State Univ. Credit Union (In re Herter), 456 B.R. 455, 467 (Bankr. D. Idaho 2011)

-19-

(citing Dewsnup v. Timm, 908 F.2d 588, 590 (10th Cir. 1990)). A bankruptcy trustee may abandon assets, but property that is not abandoned or administered by the trustee remains property of the estate. § 554(a), (d). "'Abandonment' is a term of art with special meaning in the bankruptcy context. It is the formal relinquishment of the property at issue from the bankruptcy estate." Catalano v. C.I.R., 279 F.3d 682, 685 (9th Cir. 2002). Under § 554, estate property may be abandoned in three ways. First, after notice and hearing, the trustee may abandon any property that is burdensome or is of little value to the estate. § 554(a). Second, on motion by a party in interest, including the debtor, the court may order the abandonment of certain property. § 554(b); Rule 6007(b). Third, once a bankruptcy case is closed, any assets that have been properly scheduled, but not administered, are abandoned by operation of law. § 554(c).

No abandonment occurred here under either § 554(a) or (b). Thus, abandonment, if any, could have only occurred by virtue of § 554(c). In reviewing the TFR and exhibits, nowhere did Trustee list or expressly abandon the State Court Action. The TFR states that "all scheduled and known assets of the estate have been reduced to cash, released to debtor as exempt property, . . . or have been or will be abandoned . . . ." The term "will be" certainly is not definitive. Most importantly, at the time of the Settlement/Sale Motion, Slates's bankruptcy case was still open. Thus, the State Court Action was never abandoned under § 554.

However, Trustee's lack of diligence in closing the case is the premise of Slates's estoppel argument. We agree with Slates that under § 704(a) Trustee was required to expeditiously

-20-

liquidate or abandon property of the estate, and his unexplained delay in closing the case may have been unwarranted. Although his Schedule C was ambiguous, Slates did disclose an "administrative proceeding to be filed" in his SOFA and Trustee never asked about it. Perhaps Trustee assumed it was connected to the "possible disability benefits" that he knew would be exempt and were being pursued in the "administrative action pending." Further, Slates technically scheduled the State Court Action. However, as we have found above, his description of the asset was ambiguous to the extent where we consider it not "scheduled" at all.

Although we agree that Trustee could have been more diligent in his investigation of this case, we disagree with Slates's contention that Trustee should be equitably estopped from claiming ownership of the State Court Action, at least on this record. Nothing suggests that Trustee was keeping the case open for an improper purpose. In fact, we have no idea why this case was kept open. Besides asserting that Trustee failed in his duties, Slates cites no authority to support his estoppel proposition.

Therefore, because Trustee (or any creditor of Slates) was not able to determine from reading the schedules that Slates was claiming the State Court Action as exempt, Slates failed to assert a valid exemption. Thus, Trustee was not required to object to it under Rule 4003(b). We further note that, to date, Slates has never amended his schedules to describe adequately the State Court Action he claims is exempt. Accordingly, the bankruptcy court did not err in determining that the State Court Action was property of the estate and not exempt.

**B.    The bankruptcy court did not make the necessary findings to support the Settlement/Sale Order.**

**1.    Compromises under Rule 9019.**

Rule 9019(a) authorizes the bankruptcy court to approve a compromise or settlement upon a motion of the trustee and after a hearing on twenty-one days' notice to all creditors and the U.S. Trustee.  See Rule 2002(a)(3).  Compromises are favored in bankruptcy because they avoid the expenses and burdens associated with litigation.  A & C, 784 F.2d at 1381.  Therefore, the bankruptcy court has "great latitude" in approving compromises and settlements.  Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988).  Nevertheless, the court may only approve a compromise if it is satisfied that its terms are "fair, reasonable and equitable."  A & C, 784 at 1381.

To determine whether a settlement is fair and reasonable, the bankruptcy court must consider:

(a) the probability of success in the litigation;

(b) the difficulties, if any, to be encountered in the matter of collection;

(c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Id.  Trustee, as the party proposing the settlement, had the burden of demonstrating that the settlement agreement was fair, reasonable and equitable.  Id.

**2.    Sales under § 363(b)(1).**

Section 363 governs the sale, use, or lease of property of the estate.  Section 363(b)(1) provides that "[t]he trustee, after

-22-

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." Prepetition causes of action owned by the trustee are intangible items of estate property that may be, and are often, sold. Simantob v. Claims Prosecutor, LLC (In re Lahijani), 325 B.R. 282, 287 (9th Cir. BAP 2005); § 541(a)(1); § 363(b).

To confirm a sale, the trustee must establish that: (1) a sound business purpose exists for the sale; (2) the sale is in the best interest of the estate, i.e., the sale price is fair and reasonable; (3) notice to creditors was proper; and (4) the sale is made in good faith. In re Wilde Horse Enters., Inc., 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); accord Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069 (2d Cir. 1983). Trustee also had the burden to prove these elements.

### 3. Analysis.

When opposed, a motion to compromise a controversy under Rule 9019 is subject to the provisions governing contested matters set forth in Rule 9014. 10 COLLIER ON BANKRUPTCY ¶ 9019.01 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2012). Rule 9014(c) incorporates the provisions of Civil Rule 52, which requires that findings and conclusions be stated on the record after the close of the evidence or appear in an opinion or memorandum of decision filed with the court. Civil Rule 52(a). Specifically, in an action tried on the facts without a jury, "the court must find the facts specially and state its conclusions of law separately." Civil Rule 52(a)(1), incorporated by Rule 7052.

These findings must be sufficient to indicate the factual

basis for the court's ultimate conclusions. Unt v. Aerospace Corp., 765 F.2d 1440, 1444 (9th Cir. 1985). The findings must be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision. Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 815 (9th Cir. 2003); Unt, 765 F.2d at 1444.

The bankruptcy court here did not make any findings, either orally or in the Settlement/Sale Order, indicating the factual bases it believed supported each (or any) of the A & C factors. Rather, the court summarily concluded that the compromise was "fair and equitable" according to the A & C factors. As to the sale aspect, the bankruptcy court found only that Slates had declined to participate in an auction and that no other third party expressed an interest. The court made no findings as to whether the $20,000 sale price was fair and reasonable, that notice was proper, or that a sound business purpose existed for selling the asset. It also made no finding of "good faith;" however, such a finding is not an essential element for approval of a sale under § 363(b). Thomas v. Namba (In re Thomas), 287 B.R. 782, 785 (9th Cir. BAP 2002).

Findings of fact and conclusions of law are essential to appellate review of the Settlement/Sale Order. In the absence of complete findings, we may vacate a judgment and remand to the bankruptcy court to make the required findings. See United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005). Accordingly, we VACATE the portion of the Settlement/Sale Order approving the settlement and sale of the State Court Action and REMAND with instruction

-24-

that the bankruptcy court make the required findings to support it.

## VI. CONCLUSION

Based on the foregoing reasons, we AFFIRM the bankruptcy court's ruling that the State Court Action was property of the estate and not exempt. However, because the bankruptcy court did not make adequate findings to support the settlement and sale of the State Court Action, we VACATE and REMAND that portion of the order with instruction that the bankruptcy court enter the required findings supporting it under Civil Rule 52.